THE PEOPLE, ex rel. KEECH, Appellant, *v.* HUBERT O. THOMPSON, Commissioner, etc., Respondent.

Under the limitation in the provision of the charter of the city of New York (§ 28, chap. 335, Laws of 1873), authorizing the heads of departments to remove subordinates in their departments, which prohibits the removal of a regular clerk or head of a bureau " until he has been informed of the cause of the proposed removal and has been allowed an opportunity for explanation," the power of removal may not be exercised unless some cause exists, such as neglect of duty, incapacity, or unfitness for the position.

Where, however, a statement of charges with a specification of facts furnishing a sufficient cause for removal, and sufficiently distinct to apprise the subordinate of the grounds upon which the charges are based, with notice of a time and place when an opportunity for an explanation will be given, is served upon him ; and where, at the time and place specified, an opportunity for explanation is given, the requirements of the statute are met ; it is not requisite that the charges and specifications should be drawn with the formal exactness of pleadings in a court of justice : nor is the subordinate entitled to a regular trial. The head of the department, if the explanations are not satisfactory to him, may, in his discretion, remove, without calling witnesses to substantiate the charges, or allowing testimony on the part of the subordinate ; he may exercise the power upon facts within his own knowledge or based upon information received from others.

The distinction between said provision and that giving to the mayor the power to remove heads of departments (§ 25) pointed out.

*People, ex rel. Sims,* v. *Board of Fire Comm'rs* (73 N. Y. 440), *People, ex rel. Munday,* v. *Board of Fire Comm'rs* (72 id. 445), *People, ex rel. Campbell,* v. *Campbell* (82 id. 247), *People, ex rel. Mayor, etc.,* v. *Nichols* (79 id. 588), distinguished.

The relator, who was superintendent of repairs and supplies in the department of public works, was served with a communication charging him, among other things, with neglect and inaction in the matter of fitting up two armories. By way of answer, the relator denied that such work came under his supervision and alleged that he was not responsible for the neglect. *Held* that, conceding relator was entitled to a trial when the charges were denied, this answer was in the nature of a demurrer,

and so admitted the facts charged; and, as the armories were clearly under his charge (§ 72, sub. 7), and he responsible for the neglect, there was sufficient ground for removal, and so no necessity for a trial on the other charges.

The question as to the reasonableness of the time allowed for explanation rests to a great extent in the discretion of the head of the department; and where it does not appear that the discretion has been abused, a refusal to give further time furnishes no ground for a reversal of his decision.

(Argued December 14, 1883 ; decided January 15, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made January 25, 1882, affirming the determination of respondent as commissioner of public works in the city of New York, in removing the relator from the office of superintendent of the bureau of repairs and supplies in said department. (Reported below, 26 Hun, 28.)

The proceedings of the commissioner were brought up for review by *certiorari.*

It appears by the return that on the 11th of April, 1881, the commissioner addressed to the relator the following letter :

" DEPARTMENT OF PUBLIC WORKS,
COMMISSIONER'S OFFICE, No. 31 CHAMBERS STREET,
NEW YORK, *April* 11, 1881.

" To Mr. THOMAS KEECH :

" SIR — Since our recent conversation, when I had occasion to complain of the manner in which the duties of your bureau are discharged, I have concluded to ask a full and formal explanation of the matters talked about by us.

" You are, therefore, notified that you will be allowed an opportunity at this office, at 12 o'clock, noon, of the 14th inst. (Thursday), of making an explanation of such matters, and, unless satisfactory, I shall remove you from the office of superintendent of repairs and supplies.

" After a very careful examination into the affairs of your bureau, I have become fully convinced that you have not performed the duties of your office with the requisite promptitude, intelligence and efficiency.

"The following are some of the facts and circumstances which have led me to this conviction and conclusion :

"In the final estimate for the year 1881, special appropriations were made, as requested in the departmental estimate, for 'fitting up Fifth regiment armory, Essex market, $18,000,' and for 'fitting up Sixty-ninth regiment armory, Tompkins market, $15,000.' It was your duty to report to me plans or measures toward the execution of these necessary works which came under the charge and supervision of your bureau, especially since officers of the regiments repeatedly urged upon you the necessity of fitting up the armories as speedily as possible, and you were informed of the fact that the Fifth regiment will have to vacate its present quarters and move into the armory over Essex market on the first of May next. Yet, for a period of more than three months since the appropriations were made, you have failed to report or even suggest to me any thing whatever in connection with these works, or to make any preparation or report as to their execution, and officers of the Fifth regiment have finally complained to me of your inattention and inaction in this matter.

"In the matter of placing an elevator in the brown stone court-house, for which provision was made in the departmental and final estimates for 1881, you have shown the same want of attention.

"It is one of your duties to furnish to the head of the department estimates of the cost of any work to be done, or supplies to be furnished through your bureau, to enable him to make a proper apportionment of the moneys appropriated among the various works, and supplies required, according to their necessity. But your estimates have been so flagrantly incorrect that they cannot be taken as an indication even of the ultimate cost of the respective works or supplies.

"A large proportion of the bills or vouchers for work done and supplies furnished has been unnecessarily and unreasonably delayed in your bureau. I have submitted to a great deal of annoyance by reason of complaints from tradesmen and persons dealing with the city, of the delays attending the approval of

bills passing through your bureau, and I finally came to the conclusion, after mature deliberation, to adopt a rule, which, in my judgment, gives adequate time for the necessary examination and work. It is, of course, annoying to the head of department to be dunned about bills against the department, and I have determined to relieve myself from this annoyance in the future. To that end, I issued the circular letter requiring the transmission of all bills for work, supplies or services from the respective bureaus within seven days after the receipt of the same. In your letter to me of the 31st ult., in reference to that circular, you say that it is not possible to make proper examination as to bills in your bureau within that time. You thereby state your inability or unwillingness to do that which, in my opinion, an intelligent, diligent and well-disposed officer in your position could readily do, and to discharge the duties of your office with that promptitude which the public interest requires.

"You have allowed some of the work under your supervision to be performed in a very dilatory manner to the great inconvenience of public officers, and after repeated requests by me, personally and through my deputy, that these works be more promptly executed.

"In your letter to me of the 4th instant, you say that the business of your bureau is suffering very much for want of efficient clerical help, and that for the last two months the only clerical work done was to voucher bills. You thereby acknowledge that you allowed such state of things to exist for two months without reporting it to me, to enable me to correct it if necessary.

"Very respectfully,

(Signed)     HUBERT O. THOMPSON,
*Commissioner of Public Works.*"

At the time and place assigned the relator appeared in person, accompanied by counsel, and presented an answer or explanation as follows:

1884.]     PEOPLE, ex rel. KEECH, v. THOMPSON.     455

Statement of case.

"NEW YORK, *April* 14, 1881.

"To HUBERT O. THOMPSON, *Commissioner of Public Works:*

"SIR—I am in receipt of your favor of April 11, 1881, containing certain charges against me relating to the conduct of my office of superintendent of supplies in the department of public works of the city of New York.

"With reference to said charges, and any others which you desire to make, I wish to say:

"*First.*— That I shall be ready at any time and place which you may designate to controvert or satisfactorily explain the same, provided lawful evidence be produced by you of the foundation of said charges against me, and a sufficient opportunity be given me of explaining or disproving them.

"*Second.*— I deny your right to remove me as superintendent aforesaid until I shall have been specifically and lawfully informed of each and every cause of the proposed removal, and am allowed an opportunity of making such explanation as I may be advised I am justly entitled to.

"*Third.*— With reference to the charge contained in your said letter of the 11th, relating to the 'fitting up of the Fifth and Sixty-ninth regiment armories,' I desire to say that the charge and supervision of the work to be done, and supplies to be furnished in this matter, did not come under my bureau or control, and is not, up to this date, under my control, or under the charge and supervision of my bureau, and I deny that I am in any sense responsible for the delays or inattention complained of by you in the premises.

"*Fourth.*— As to the matter of placing an elevator in the brown stone court-house, which came under the charge and supervision of my bureau, I desire to say that when the appropriation therefor was passed to the credit of my bureau, I at once took the necessary steps to carry out the work; but by the direction of the acting commissioner, and in consequence of his acts, and not of mine, in the premises, the carrying out of the work has been delayed up to this time—of all of which you had due notice.

" *Fifth.* — I deny that my estimates on work to be done for the department have been so flagrantly incorrect that they could not be taken as an indication of the ultimate cost of the respective works or supplies, and I deny that bills or vouchers for said work done, and supplies furnished, have been unnecessarily and unreasonably delayed in my bureau; and also that in any instance I have refrained from transmitting to you bills for work and supplies, or services, within seven days after the receipt of them, except in a very few cases where a proper and accurate examination and report thereon could not be made within that time, and of which, whenever occurring, I informed you.

" *Sixth.* — I deny that I have allowed any portion of the work under my supervision to be performed in a dilatory manner, to the great inconvenience of public officers, and I demand that you produce lawful evidence of specific times and places where such acts as you allege occurred.

" *Seventh.* — I desire to state further that all delays which may have occurred for some time past in the business of my bureau are due to the fact that all the clerical force in my office is, and has been for some time past, very inefficient, and was originally placed there without consultation with me, and without my knowledge, and was removed in the same manner, and of this inefficiency you have been from time to time notified by me.

" *Eighth.* — I assert that at all times since I have held this office (now six years), I have performed its duties honestly, and with that degree of intelligence which the position requires, and I further assert that any delay in business, unskillful work, or any other matters in my bureau, which may have been complained of, were not due to my conduct, but to others, over whom you did not permit me to have sufficient control to regulate the speed and quality of the work performed.

" *Ninth.* — I respectfully urge my right and request:

" 1. That each and every charge which you desire to make be reduced to writing, and be definitely and specifically framed, and that lawful evidence be produced to sustain each of them.

" 2. That I be allowed to answer each charge in writing, and

to produce lawful testimony to controvert or explain the same; and

" 3. That I may be represented by counsel in the hearing and conduct of any investigation which may be made by you in the premises.

" Yours very respectfully,

(Signed)   THOMAS KEECH."

A colloquy then took place between the commissioner and the counsel, which is set forth at length in the return, the substance of which is that the relator reiterated his claim to the right to take testimony as to any defense or explanation which he might have to make to either or any of the charges, and insisted that before the commissioner could remove him, he (the commissioner) must produce oral or other testimony to substantiate any charge which he had made or desired to make, and that the answer, in writing, was a sufficient explanation of the charges in the commissioner's letter, so far as they were specific and definite enough to be answered. The commissioner declared his readiness to hear any thing that the relator wished to say in addition to his written answer, but refused to postpone the hearing for that purpose, and insisted that his letter of the 11th day of April was a sufficiently definite and specific statement of the charges. The commissioner, after hearing whatever was alleged or claimed by the relator's counsel, adjudged that the charges of his letter were not satisfactorily explained, and made an order removing him.

*DeB. Wilmot* for appellant. An appeal lies from the order of the General Term, dismissing the writ of *certiorari.* (*People, ex rel. Campbell,* v. *Campbell,* 82 N. Y. 247; *People, ex rel. Clapp,* v. *B'd of Police,* 72 id. 415; *People, ex rel. Citizens' Gas-Light Co.,* v. *B'd of Assessors,* 39 id. 88.) The appellant could only be removed for cause, and then only after a reasonable opportunity of being heard. (*People, ex rel. Campbell,* v. *Campbell,* 82 N. Y. 247; *People, ex rel. Sims,* v. *B'd of Fire Comm'rs,* 73 id. 440; *People, ex rel. Munday,* v. *Board of Fire Comm'rs,* 72 id.

445; *People, ex rel. Mayor,* v. *Nichols,* 79 id. 588.) The court can examine into the record and see whether the respondent has exercised his authority in the mode prescribed by law and whether there was any rule of law violated to the prejudice of the appellant in the proceedings upon his removal. (*People, ex rel. Cook,* v. *B'd of Police,* 39 N. Y. 517; *People, ex rel. Haines,* v. *Smith,* 45 id. 772; *People, ex rel. Hart,* v. *B'd of Fire Comm'rs,* 82 id. 360; Code of Civil Procedure, § 2140, subds. 2, 3; Dillon on Municipal Corporations, §§ 192–193; *Murdock* v. *Phillips Academy,* 12 Pick. 244; 2 Burn's Ecc. Law, 145; *Page* v. *Hardin,* 8 B. Monroe, 648; *Rex* v. *A. Steward, etc.,* 8 D. & E. 352; *Osgood* v. *N. L. R.,* 5 E. & I. App. H. of L. 636; Wilcox on Municipal Corporations, 702; *Baggs' Case,* 11 Rep. 93, 99, Lord Coke's Notes; *People, ex rel. Nichols,* v. *Mayor, etc.,* 79 N. Y. 588; *People, ex rel. Wilbur,* v. *Eddy,* 57 Barb. 598; Potter's Dwarris on Statutes, 186–187; *Hart* v. *Cleis,* 8 Johns. 44; *Donaldson* v. *Wood,* 22 Wend. 395; Potter's Dwarris, 49.) The appellant should have been allowed a reasonable time and opportunity to produce evidence or proof by way of explanation of the charges made. (*In re Emmet,* 65 How. 266; Cushing on "Law and Practice of Legislative Assemblies," "Hearing Parties," 406–7.) This case comes under the provisions of the Code of Civil Procedure. (Code of Civil Procedure, § 2140, subds. 4, 5; *People, ex rel. Murphy,* v. *French et al.,* 92 N. Y. 306.) Under the provisions of the statutes in force at the time the charter was enacted, and also under the provisions of the Code of Civil Procedure, the respondent had ample power to procure the attendance of witnesses and to administer oaths. (Laws of 1843, p. 37; Code of Civil Procedure, §§ 854, 855, 856.)

*D. J. Dean* for respondent. The method of the relator's removal by the commissioner of public works is in accord with the provisions of the charter. (Laws of 1873, chap. 335, p. 503, § 72, subd. 7; *People, ex rel. Folk,* v. *Police B'd,* 69 N. Y. 409.) The statute does not require proof of cause to be made as the condition of the right to remove. (*People, ex rel.*

*Munday*, v. *B'd of Fire Comm'rs*, 72 N. Y. 449; Laws of 1873, chap. 335, §§ 41, 77; *People, ex rel. Mayor*, v. *Nichols*, 79 N. Y. 582; Laws of 1870, chap. 137, § 29; Laws of 1857, chap. 446, §§ 20, 21; Laws of 1870, chap. 137, § 32.) It is not necessary that the court should agree with the commissioner upon the propriety of his judgment. (*People* v. *B'd of Police*, 69 N. Y. 409; 82 id. 361; *Munday* v. *Fire Comm'rs*, 72 id. 449.)

MILLER, J. The relator was removed by the commissioner of public works in the city of New York from the office of superintendent of repairs and supplies in the department of public works, and the question upon this appeal is, whether the course pursued by the commissioner in making the removal was in accordance with the provisions of the charter and sanctioned thereby. The authority to remove the relator from the office which he held is conferred by the provisions of the charter of the city. (Laws of 1873, chap. 335, § 28.) The section in question reads as follows: "The heads of all departments (except as herein otherwise specifically provided) shall have power to appoint and remove all chiefs of bureaus (except the chamberlain), as also all clerks, officers, employees and subordinates in their respective departments, except as herein otherwise specially provided, without reference to the tenure of office of any existing appointee. But no regular clerk or head of bureau shall be removed until he has been informed of the cause of the proposed removal, and has been allowed an opportunity for explanation, and in every case of removal the true grounds thereof shall be forthwith entered upon the records of the department." It will be noticed that preliminary to removal the commissioner is required to inform the officer of the cause of the proposed removal, and to allow him an opportunity for explanation. Until these conditions are complied with the power of removal is not vested in the commissioner and no action can be taken by him. The power does not rest in his volition alone, and unless some cause exists, such as a neglect of duty, a want of capacity, or some act or

conduct which evinces an unfitness for the position filled by the officer, the commissioner cannot lawfully remove him. (*People, ex rel. Munday*, v. *Board of Fire Comm'rs*, 72 N. Y. 445.) The record in this case shows that a communication was served on the relator on the 13th day of April, 1881, signed by the commissioner, in which he stated the charges against the relator and notified him that he would be allowed an opportunity at the commissioner's office on the 14th, at 12 o'clock, to make an explanation as to the matters specified, and unless the explanation was satisfactory he would be removed from the office of superintendent of repairs and supplies. It cannot be denied that the communication of the commissioner sufficiently specifies the cause of removal, stating the facts out of which they arose with sufficient distinctness so as to advise the relator of the grounds upon which the charges were founded. If the facts alleged were true they showed a failure of the officer to perform his duties, and such neglect as would have authorized his removal if no satisfactory explanation was made. It also appears that at the time and place named in the notice the relator appeared in person and by his counsel, and submitted a statement or explanation in writing, in which, after stating that he would be ready at any time or place to controvert or explain the charges made, if legal evidence was produced to sustain the same and an opportunity be given to explain or disprove them, he took issue on some of the allegations, explained others, and then claimed that the charges should be reduced to writing, definitely and specifically preferred, and lawful evidence produced to sustain them, and that he be allowed to answer them and produce evidence to controvert them, and that he be allowed counsel. A conversation then took place between the relator, his counsel and the commissioner in which a trial was demanded by the relator upon the charges made, and that they should be proved by evidence, and an opportunity be furnished to controvert the same. The position of the relator was that formal charges should be presented with strict accuracy, and that a regular trial should be had upon the same, partaking somewhat of the character of such a proceeding in a court of

law.   The commissioner signified his willingness to receive any further statement or explanation at that time, saying that the statement made was entirely unsatisfactory, and he refused to give the relator any further opportunity to answer the charges, in other words, he denied the right of the relator to a formal trial.   On the next day the commissioner notified the relator in writing of his removal from office.

In regard to the charges made the written communication and notice sent by the commissioner to the relator were sufficiently specific and distinct for the purpose of advising him as to their true character.   They set forth various instances in which it was alleged the relator had been guilty of a dereliction of duty, with sufficient particularity, so that he could meet and explain the same.   The charges as made were sufficient to answer the purpose intended, and were within the requirements of the statute under which the proceeding was had.   It was not necessary that the proceedings should be conducted with that degree of exactness which is required upon a trial for a criminal offense in an ordinary tribunal of justice, and it cannot be said that the charges made were insufficient.

The next inquiry which arises is whether the commissioner committed an error in his decision in refusing to require that evidence should be given to establish the allegations made, and in not allowing testimony to be introduced in favor of the relator.   The commissioner was acting by virtue of the statute already cited, and he was bound to follow its provisions, and to fulfill its requirements and nothing more.   There is nothing in the statute which requires that the cause of removal shall be established by proof taken before the commissioner.   It seems to have been intended that the commissioner should exercise this power upon facts within his own knowledge, or based upon information received by him, after communicating to the relator his purpose of removing him, with notice of the reason why he proposed to take such action, and after allowing him an opportunity to make explanation as to the facts assigned as grounds for the removal.   No testimony is required to be taken as to the basis of the commissioner's action; it is enough

that he assigns a sufficient cause for the removal, and furnishes an opportunity to the relator for explanation of the same. This tends to prevent removals without any cause whatever, or upon personal or political grounds. It would be unnecessary to take proof of neglect or omission of duty within the knowledge of the chief of the department, and the statute does not require any such formality. The chief of a department, under the statute, is authorized and required to inform the subordinate of the grounds which induced him to believe the subordinate to be negligent, unfit or incapacitated to perform his duties, and for which he proposes to remove him. The statute makes no provision for a formal trial, it does not require that witnesses shall be produced by the commissioner, and that the officer shall be permitted to cross-examine the same, or that he shall be allowed to produce witnesses for himself, or to be heard upon a trial, but simply and alone allows him to make explanation, and then leaves the matter of removal in the discretion of the commissioner. Having in view the fact that the commissioner, in the proper discharge of his duties, would have knowledge generally as to any neglect or remissness of his subordinate officer, or that he would have information from which he would be justified in drawing an inference as to his acts and conduct, it is a fair and reasonable assumption that it was the intention of the statute to commit to the commissioner the power to remove for reasonable cause to act upon his own knowledge, as to the facts, and to determine when within his knowledge, so far as they were denied by the relator, and to judge whether the excuses presented by him were reasonable and sufficient, so far as they were not denied. Such a discretion is not unlimited, and can only be exercised for some reasonable cause as was held by ALLEN, J., in *People, ex rel. Sims,* v. *Bd. Fire Comm'rs* (73 N. Y. 440). Without it the power of removal might be of little avail. If the commissioner was to be constituted a court for the purpose of trying every charge which might properly be preferred for violation of duty, it would tend very much to embarrass the action of that officer, and also interfere with the interest of the public. If a trial was to be had the

law no doubt would have so provided, and not for an explanation merely. In cases where the legislature intended that the removal should not be made without cause proven, provision is made for the preferring of charges, and an examination of the same. This rule prevails as to members of the police force. (§ 41, chap. 335, Laws of 1873.) And, also, as to firemen. (§ 77, ibid.)

It is insisted by the learned counsel for the appellant that no distinction exists as to the construction to be placed on section 28, cited *supra*, and section 25 of the same act, which relates to removals by the mayor and which is as follows: " The heads of all departments, including those retained as above, and all other persons whose appointment is in this section provided for, may be removed by the mayor for cause and after opportunity to be heard." It is claimed that the provisions of both these sections relating to removal of officers are substantially the same, and that this view is sustained by the decisions of this court. The cases cited to sustain this position do not go to the extent claimed for them by the appellant's counsel. In *The People, ex rel. Sims,* v. *Board of Fire Commissioners* (73 N. Y. 440), the question was, whether the board had the right to remove an officer, who was not the head of a bureau or a clerk, and it was held that the relator was a subordinate ministerial officer, removable at the pleasure of the board. No question was made as to the interpretation to be given to the language of section 28, which has been referred to. The remarks of ALLEN, J., already referred to, are not inconsistent with the right to remove where reasonable cause exists within the knowledge of the commissioner. In *The People, ex rel. Munday,* v. *Board of Fire Commissioners* (72 N. Y. 445), the relator was a regular clerk in the fire department; a notice was served on him requiring him to show cause why he should not be removed, without stating any cause for the proposed removal. The relator appeared and asked to be informed of the cause for his removal; none was stated; but the board requested him to show cause why he should not be removed, and he was thereupon discharged. It will be seen that no cause

whatever was assigned, and therefore no opportunity was furnished for an explanation. The opinion of ALLEN, J., properly holds that the removal must be for cause, and that the statute must be pursued by allowing an explanation of the unfavorable appearances, or disproving the charges. This may be done orally or in writing, or perhaps when a positive fact is asserted and not within the knowledge of the commissioner and susceptible of a direct denial, by affidavits. The case cited does not decide that a regular trial should be had in which evidence could be introduced on both sides in reference to the charges made. In *The People, ex rel. Campbell,* v. *Campbell* (82 N. Y. 247), the facts were all conceded by the relator, and no question in relation to the necessity of a formal trial, or of proving facts averred on the one side and denied on the other, was presented. The case turned upon the question, whether the fact averred and admitted to be true was of itself properly the subject-matter of the charge against the relator, inasmuch as it appeared that a person not under the relator's control was chargeable with the negligence. The opinion does not hold that a regular trial must be had under section 28, in such a case. From the authorities referred to, we think there is no ground for the position that the same construction is to be placed upon section 28 as given to section 25 in the case of *People, ex rel. Mayor, etc.,* v. *Nichols* (79 N. Y. 588), where it was held that the charges must be specified, and, unless admitted, must be proven to be true, with the right to the relator to cross-examine witnesses, and call others, and in this and other steps in the proceedings to be represented by counsel.

It is apparent, we think, that a wide distinction exists between the two sections. Section 25 relates to removals by the mayor of heads of departments, while section 28 refers to subordinates in office. Under the charter of 1870, heads of departments could be removed only after impeachment or trial, and until 1873 all subordinates, including heads of bureaus and clerks, were removable at the pleasure of the heads of departments. These distinctions were followed in the charter of 1873, and the language applicable to the different officers is not the

1884.]        PEOPLE, ex rel. KEECH, v. THOMPSON.        465

Opinion of the Court, per MILLER, J.

same.  In section 25 the removal is only to be had "for cause, after an opportunity to be heard," which implies that a hearing must be had, which is equivalent to a trial, as the case last cited holds.  The language of this section is direct and peremptory.  Under section 28 the officer is to be informed of the cause of removal, and permitted, not to have a hearing or trial, but only an opportunity to make an explanation in reference to the charges preferred.  There is a difference between a hearing and an explanation.  The former may well import, as has been held, a formal trial, while the latter involves merely an oral or written statement as to the charges made without that precision and formality which is required upon a hearing or trial.  The one has reference to officers of a higher grade, who are charged with dereliction of duty before the chief magistrate of the city, while the other relates to such officials who are called to account by the head of the department in which they are employed.  Under section 25 the removal is not accomplished without the approval of the governor, while under section 28 it rests with the head of the department, on proper cause being shown.  The difference between the two sections is so marked and manifest that there appears no valid ground for contending that the same interpretation should be given to each of them.

An examination of the charges made evinces that most of them must have been within the knowledge of the commissioner.  They related to a neglect of duty on the part of the relator, and it is not difficult to see that the commissioner, who was familiar with the transactions, might properly have decided that the introduction of evidence by the relator could not have explained the charges made in a satisfactory manner. A brief reference to the charges made discloses beyond any question that one at least of them was conceded to be true, or sufficiently and fully established.  This of itself would justify the conclusion at which the commissioner arrived.  The first charge was neglect and inaction in the matter of fitting up two armories.  The relator, by way of answer, denied that such work came under his charge, and alleged that he was not

responsible for the neglect.   The answer was in the nature of a demurrer.   If the relator was responsible, then the charge was established, and there would be no necessity of a trial on the other charges.   Even if he had denied the other charges, the commissioner was justified in holding that this one was sufficient to authorize his removal.   The armories were clearly under the charge of the relator (Subd. 7, § 72, chap. 335, Laws of 1873), and, as this allegation was clearly admitted and no defense interposed or time asked to present proof in regard to it, the decision of the commissioner should be upheld, even if the other charges are not sustained.   As to the second charge, as to constructing an elevator in the court-house, the relator answered that his delay was caused by the acts or orders of the acting commissioner.   There was no officer known as such acting commissioner, and the commissioner himself only had charge and knowledge in regard to the work.   This being within his knowledge, it would seem that he was justified in considering this explanation unsatisfactory.   The third charge was that the estimates of cost of work were flagrantly incorrect.   This was denied by the relator.   As it was a fact within the commissioner's knowledge, evidence on the subject would seem to be of no avail, and the denial could not well have been substantiated if delay had been granted to produce evidence. The fourth charge, of delay in forwarding bills, was acknowledged to be true in some cases, and the excuse was made that the examination of the same could not be accomplished within the time named.   The commissioner was acquainted with the facts relating to these bills, and it was within his province to determine whether the excuse made was sufficient and satisfactory, and the conclusion arrived at by him cannot be reviewed.   To the fifth charge, in reference to a want of clerical help in the relator's bureau, he answered that he had notified the commissioner from time to time of such inefficiency. The correctness of the answer made was manifestly within the knowledge of the commissioner, and it was clearly for him to say whether the introduction of evidence could have changed the aspect of the case, or in any way support the relator's

answer in this respect.    He clearly had the right to judge as
to the truth of the allegation, which was within his own
knowledge, and his decision in regard to this answer was con-
clusive.

The point is made that relator should have been allowed a
reasonable time and opportunity to produce evidence or proof
by way of explanation.    The question as to the reasonableness
of the time allowed  must to a great extent rest in the discre-
tion of the commissioner, and, as it does not appear in this case
that such discretion was abused, we do not think that the time
fixed and the refusal to grant further time, of itself, furnishes
ground for a reversal of the order.    There is no other question
in the case which demands discussion, and the order of the
General Term should be affirmed, with costs.

All concur.

Order affirmed.