PEOPLE *ex rel.* WOLTMAN *v.* MYERS, Comptroller, etc.

(*Supreme Court, General Term, First Department.* June 6, 1890.)

MUNICIPAL CORPORATIONS—REMOVAL OF OFFICERS.

On *certiorari* to review the removal of relator from his position of clerk of markets on the ground that it was in violation of Laws N. Y. 1882, c. 410, § 48, declaring that no regular clerk or head of a bureau shall be removed until he has been informed of the cause of the proposed removal, and allowed an opportunity to explain, and that in every case of removal the true grounds thereof shall be entered on the records of the department or bureau, it appeared that in the course of an investigation relating to the allotment of market-stands witnesses testified to paying relator money for getting them stands; that the city comptroller caused to be sent to relator an oral communication informing him of the testimony and calling for an explanation; that a letter from relator was subsequently received by the comptroller showing relator had received information concerning his conduct, admitting that he had received the money, and stating he had donated it for political purposes; and that thereupon his removal was ordered. *Held*, that relator had been afforded the opportunity secured by the statute for explanation, and that the legality of his discharge was not affected by the fact that relator's inability to discharge his duties was entered on the record as the cause of his removal.

*Certiorari* to review the action of Theodore W. Myers, comptroller of the city of New York, in removing relator, Henry Woltman, from his position as clerk of markets. For former ligitation, see 8 N. Y. Supp. 555.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Solon P. Rothschild*, for relator. *Henry B. Twombly*, for respondent.

DANIELS, J. The writ has been issued upon the assertion of the relator that he was removed from his position of clerk of the markets in violation of section 48, c. 410, Laws 1882. So much of the section as is asserted to have been infringed by his removal is that declaring that "no regular clerk or head of a bureau shall be removed until he has been informed of the cause of the proposed removal, and has been allowed an opportunity of making an explanation, and in every case of a removal the true grounds thereof shall be forthwith entered on the records of the department or bureau." But by the return which the respondent has made to the writ it appears that an investigation had taken place before the commissioners of accounts, of the methods of the department of finance, so far as they related to the allotment of stands or stalls in the new West Washington Market, and that in the course of that investigation it appeared that the relator received money from certain market-stand holders during the latter part of the year 1888, and prior to the 4th of January, 1889, and that Michael Woolley had testified before the commissioners that he had asked the relator to look out for the interests of the witness in the allotment of stands, and had paid him $25 for so doing; that Frederick Menk had also testified that he and his partner had applied to Woltman to have certain stands allotted to them, and upon the allotment he had paid $25 or $50 to Woltman for election purposes; that Nelson Doe had testified that, for the allotment of stands to his firm of Dudley, Clapp & Doe, he made a present of $100 to Woltman, and that Francis Lowery testified that his firm had given $250 to the relator for his services in getting them four stands in the market, and that other persons had paid him $25 for his trouble in arranging stands for them. The amended return also stated that the comptroller had sent to the relator an oral communication by Brewster Maverick that he had been informed that testimony had been taken before the commissioners of accounts that the relator had received bribes in his official capacity, and therefore demanded an explanation of his conduct with reference thereto, on the ground that his conduct, if unexplained, would call for his removal. Maverick in an affidavit made by him subsequent to the return denied having conveyed this communication to the latter. But this denial, as well as that of the relator himself, is overcome in its effect by the letter of the latter to the comptroller, dated on the 17th of March, 1889, for by this letter it appears that the relator had received information concerning his conduct, requiring on his part an explanation, and this letter then proceeded to give such an explanation as the relator supposed would exonerate him from the effect of the testimony given before the commissioners of accounts; and in his letter of explanation he admitted that he had received money which he had donated for political purposes. No other evidence to support his statement was supplied by him in any form to the comptroller, and the letter in its details clearly indicates that information had been received by the relator of the nature and character of that mentioned in the return of the comptroller, and that it was in answer to that, and in compliance with the necessity of explanation on his part, that the letter was written; and after receiving this letter from the relator the comptroller made the order removing him from his office.

The section of the act of 1882 does not require any special formality in the proceedings to be taken for the removal of the clerk, but what has been required is that information shall be given to him of the cause of the proposed removal. The information is not required to be in writing, although it is advisable that it should be, and it could therefore be communicated in the form in which the comptroller conveyed it, and which it appears from the conduct of the relator he received, and it afforded the opportunity for explanation to the latter which the statute was intended to secure to him before his removal could regularly be made. But when this explanation was received by the comptroller, then he was at liberty to act upon the case. He was not concluded by the letter and explanation of the relator, neither was it necessary

that the evidence which had been taken before the commisssioners of accounts should be again taken before the comptroller, or in the presence of the relator himself. For the law permitted the comptroller to act upon the testimony which in this manner had been taken and brought to his attention by the commissioners of accounts, and upon the effect of that evidence, as he believed it to be truthful, to remove the relator from his position. This subject was examined, and very fully considered in *People* v. *Thompson*, 94 N. Y. 451, where the course taken in this instance by the comptroller was sanctioned by the judgment of the court. It was there held that a formal trial or investigation was not required by the law, as indeed it was not from the language which has already been quoted, and that its provisions will be satisfied by the proceedings taken in the manner in which this was conducted by the comptroller. What he was required to do was to call upon the relator for an explanation of these facts disclosed and supported by the testimony of these witnesses, and when he gave that explanation that fulfilled the design of the act; and as long as it proved to be unsatisfactory and unreliable, then the comptroller was authorized to remove the relator from his office. It is true that the act was not complied with in the entry on the record of the true cause of the relator's removal. But this was induced by a feeling of generosity and charity on the part of the comptroller to save the character and position of the relator, and instead of stating upon the record, as the fact was established to the satisfaction of the comptroller, that the relator had been guilty of this misconduct, he was mildly informed, and the conclusion was so recorded, that he was removed because of his continued inability to discharge the duties of clerk of the market. But as a sufficient legal cause for his removal was presented and sustained, and he was afforded the opportunity secured by the statute for explanation, the comptroller was authorized to remove him, as long as the explanation given by him proved to be unsatisfactory, and that effectually terminated the proceeding so far as it is brought before this court to be reviewed by virtue of the writ of *certiorari*, and it should be affirmed with costs, the amount of which will be settled by the order to be entered.

VAN BRUNT, P. J., concurs.    BRADY, J., concurs in result.