In the Matter of the Application of GERALD S. GRIFFIN, Appellant, for a Peremptory Writ of Mandamus against HENRY S. THOMPSON, Individually and as Commissioner of the Department of Water Supply, Gas and Electricity of the City of New York, et al., Respondents.

Civil service — New York (city of) — cause assigned for the removal of a person holding a position in the classified civil service of New York city must be substantial.

1. The cause assigned for removal under section 1543 of the Greater New York charter (L. 1901, ch. 466) of a person holding a position in the classified civil service must be substantial and not shadowy. The cause assigned must be some dereliction on the part of the subordinate, or neglect of duty, or something affecting his character or fitness for the position. The proceeding is not a mere form to precede a predetermined removal.

2. An assistant engineer in the department of water supply, gas and electricity was removed by the commissioner of the department upon three charges made by its chief engineer. One charge was to the effect that when the chief engineer called on the assistant to turn over his work, records and force to another man he was guilty of insubordination because he "respectfully" protested against putting some one else in charge of his work and against any attempt to remove him, and demanded that he be continued and retained in his present position. Another was to the effect that he denied that he had signed the payrolls for certain employees when in fact he had so signed them. It is not charged that he improperly signed these payrolls or that he willfully or for any purposes of fraud or deception denied signing them, or that the city in any way suffered either from his signing the payrolls or from the denial that

he had signed them. Another charge accused him of "insubordination" because he ordered men under his control to do certain work "not only without the direction or authority of the Chief Engineer of the department but without the knowledge of the latter." As to the latter charge it appears that what was done by the assistant was, or might be assumed to have been, authorized by the deputy commissioner. *Held*, that the removal was in disregard of the rules which protected the person so removed under the civil service.

*Matter of Griffin* v. *Thompson*, 140 App. Div. 904, reversed.

(Argued March 11, 1911; decided May 2, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 14, 1910, which affirmed an order of Special Term denying an application for a peremptory writ of mandamus to compel the petitioner's reinstatement in the position of assistant engineer in the department of water supply, gas and electricity of the city of New York.

On or about August 3, 1888, as the result of a civil service competitive examination, the petitioner was appointed chainman in the department of docks in said city, at a salary of $12 a week. Thereafter and prior to September, 1908, by various promotions, he had attained the position of assistant engineer in the department of water supply, gas and electricity, and he continued to hold this position until his removal in April, 1910. He was, at the latter date, drawing a salary of $3,000 a year, in addition to an allowance of $2.25 a day for the use of a horse and wagon.

In April, 1910, charges of insubordination, neglect of duty and incompetence were preferred against him by one de Varona, who was chief engineer in the department mentioned. The specific charges as they may be condensed were as follows:

*First.* That " On or about September, 1908, and for a period before or after that date, said Assistant Engineer * * *, ordered the men in the repair gangs, of which he had charge, to do certain work * * * which was

in charge of the Water Registrar not only without the direction or authority of the Chief Engineer of the Department, but without the knowledge of the latter, who only recently discovered the facts in the case." The following letter addressed by appellant to the water registrar was appended to this charge as "establishing Mr. Griffin's connection with the work referred to:" "I submit herewith plan and estimate of the main parts necessary to erect the large meter testing machine at East 24th street. As it is our intention to assemble the various parts ourselves, we now require the parts shown on the accompanying sketch. I have asked several parties to estimate on this work, but up to the present time I have received but one estimate, that from John Turl's Sons."

*Second.* The chief engineer of the department addressed to appellant the following letter: "You will arrange to turn over at once all the work, records, and force under your charge to Mr. George A. Taber, Assistant Engineer, who will have immediate charge of all maintenance work in the Boroughs of Manhattan and the Bronx." To this the appellant in part replied: "Inasmuch as I am an honorably discharged veteran fireman and have not been lawfully removed from my position, I respectfully protest against your putting Mr. Taber in charge of any of the work which has been placed under my supervision and against any attempt to remove me from my present position; and I demand that I be continued and retained in my present position of Assistant Engineer," etc. This was held to be insubordinate and insulting conduct.

*Third.* Among the men employed in the gangs of which the appellant had charge were some "tappers" with their horses and wagons and whose salaries amounted to a considerable sum, and it was charged that "Mr. Griffin was so unacquainted with the details of this work and the duties of these men that he denied that he signed the pay-rolls for these men and the wagons, or was responsible

for them, and had to be confronted with signed payrolls in order to admit the fact."

The commissioner of the department directed the deputy commissioner to conduct a hearing of the appellant on the foregoing charges and the latter subsequently made to his superior a report which in effect sustained the charges, and, amongst other things, contained the following statement with relation to the first charge hereinbefore set forth: "Acting under verbal orders, as Mr. Griffin claims, from the then Deputy Commissioner, Mr. Loughman, which Mr. Loughman confirms in a letter written this week, and through some arrangement with Mr. Padden, Mr. Griffin made plans and ordered a testing plant * * * without informing Mr. de Varona * * * although at a later time in 1909 Mr. de Varona did know that such a testing plant was being constructed."

Thereafter the commissioner refusing to accept as satisfactory the explanations made by the appellant on the hearing and of which the most important was that whatever work he had done covered by the first charge had been so done by the direction of the deputy commissioner of the department, removed appellant on a statement of reasons which conform to the charges except in the case of the first one where it is simply stated that appellant "on or about September, 1908, and thereafter directed men in the repair gangs of which he had charge to do certain work * * * without the authority or knowledge of the Chief Engineer."

*Roger Foster* and *Anthony J. Griffin* for appellant. The first charge is completely answered by the letter of the former deputy commissioner. (*People ex rel. Ryan* v. *Sturgis*, 96 App. Div. 620; *People ex rel. Mitchel* v. *La Grange*, 2 App. Div. 444.) The second charge of insubordination for writing a letter of protest against the removal of the petitioner is clearly frivolous. (*City of Rockford* v. *Compton*, 115 Ill. App. 406; *Andrews* v.

*King,* 77 Maine, 224; *People* v. *Therrin,* 80 Mich. 187; *State* v. *Smith,* 35 Neb. 13; *Matter of Hayes,* 56 App. Div. 20; 166 N. Y. 603; *People ex rel. Ross* v. *Dooling,* 132 App. Div. 50; *Reilly* v. *Mayer,* 96 N. Y. 331.) The third charge is also insubstantial and cannot justify any removal. (*People ex rel. Brennan* v. *Bingham,* 130 App. Div. 710; *People ex rel. Croker* v. *Sturgis,* 91 App. Div. 286; *People ex rel. Reardon* v. *Partridge,* 86 App. Div. 310.) It clearly appears from the uncontradicted statements in the motion papers that the removal was not made in good faith and that the action upon the explanation was not made in good faith. (*People ex rel. Mitchel* v. *La Grange,* 2 App. Div. 444; 151 N. Y. 664.)

*Archibald R. Watson, Corporation Counsel* (*Clarence L. Barber, Theodore Connoly* and *Elliot S. Benedict* of counsel), for respondents. A writ of mandamus, either peremptory or alternative, should not issue to one not protected by the Civil Service Law who has been given a reasonable opportunity to make an explanation in relation to substantial charges. (*People ex rel. Kennedy* v. *Brady,* 166 N. Y. 44; *People ex rel. Baum* v. *Butler,* 120 App. Div. 807; *Matter of Eckstein* v. *Brannan,* 134 App. Div. 965; *People ex rel. Brown* v. *O'Brien,* 137 App. Div. 311.) Section 1543 of the revised New York city charter was complied with both as to law and procedure. (L. 1901, ch. 466; *People ex rel. Lawson* v. *Coler,* 40 App. Div. 65; 159 N. Y. 569.)

HISCOCK, J. The appellant was removed on charges from his position as assistant engineer in the department of water supply, gas and electricity in the city of New York. He held this position as the result of original appointment under a competitive civil service examination and various subsequent promotions and thereby was protected against arbitrary removal. He claims that his

rights in this respect were violated and that having been removed without sufficient cause he should be reinstated. He also originally claimed that his tenure of position was fortified by service as a member of a volunteer fire department in the borough of Richmond, and that certain rights thereby acquired were violated in his removal. This last claim, however, is without merit, for his alleged membership was one of those sham memberships which have been repeatedly condemned by the courts when urged as a basis for relief in such a proceeding as this. (*People ex rel. Storey* v. *Butler*, 124 App. Div. 148; *People ex rel. Vineing* v. *Hayes*, 135 App. Div. 19, 22 ; *People ex rel. Stewart* v. *Ahearn*, 131 App. Div. 932; affd., 199 N. Y. 526.)

I pass, therefore, to the consideration of the question whether his removal was in disregard of those rules which protected him as holding position under the civil service. In determining this it will be best in the first place to state these rules and then by them measure what was done.

Section 1543 of the charter of Greater New York (L. 1901, ch. 466) applicable to the present case provides: "No * * * person holding a position in the classified municipal civil service subject to competitive examination, shall be removed until he has been allowed an opportunity of making an explanation; and in every case of a removal, the true grounds thereof shall be forthwith entered upon the records of the department * * * and a copy filed with the municipal civil service. In case of removal, a statement showing the reason therefor shall be filed in the department."

The case of *People ex rel. Mitchel* v. *La Grange* (2 App. Div. 444; affirmed on opinion below, 151 N. Y. 664) involved a writ of certiorari to review the removal of relator who had been a fire marshal. Section 48 of chapter 410, Laws of 1882 (Consolidation Act), contained practically the same provision for his protection

as that now invoked by the appellant. In construing that provision and applying it to the determination of the proceeding then before it, the court said: "It is well settled that the commissioners may exercise their power of removal upon facts within their own knowledge, or upon information which they have received, and that testimony is not required to be taken as to the basis of their action. (*People ex rel. Keech* v. *Thompson,* 94 N. Y. 451.) It is equally well settled that the cause assigned must be substantial and not shadowy, and that the explanation must be received and acted upon in good faith and not arbitrarily. To be substantial, the cause assigned must be some dereliction on the part of the subordinate, or neglect of duty, or something affecting his character or fitness for the position. * * * This explanation is not a mere form to precede a predetermined removal. The minds of the commissioners must be open to the explanation. They must act upon it fairly and reasonably. They cannot arbitrarily disregard it." (p. 445.)

*People ex rel. Kennedy* v. *Brady* (166 N. Y. 44) involved a writ of certiorari to review the removal by a commissioner in the department of buildings of a subordinate holding a position subject to competitive examination under the Civil Service Law. In that case the court cited with apparent approval *People ex rel. Keech* v. *Thompson* (94 N. Y. 451) as holding that the law was sufficiently complied with "where a statement of charges with a specification of facts furnishing sufficient cause for removal and sufficiently distinct to apprise the subordinate of the grounds upon which the charges are based, with notice of the time and place when an opportunity for an explanation will be given, is served upon him, and where, at the time and place specified, an opportunity for explanation is given." It was said: "The reasons assigned for the removal must appear, upon their face, to justify the action; in other words, they must be substantial and not frivolous, but

when they appear to be sufficient to justify the deter-
mination the courts have no power to interfere on the
ground that the reasons, though good in themselves, had
no existence as matter of fact, or that the explanation
given by the subordinate should have satisfied the head
of the department." (p. 48.)

When we scrutinize the charges and reasons on and
for which appellant was removed in the light of these
statutory provisions and decisions, they seem to be entirely
insufficient to sustain the removal.

Two of the charges are so fanciful and unsubstantial
as to appear somewhat ridiculous when subjected to seri-
ous and impartial consideration. The first of them, as
has already been stated, is to the effect that when the
chief engineer called on the appellant to turn over his
work, records and force to another man he was guilty
of insubordination because he "respectfully" protested
against putting some one else in charge of his work and
against any attempt to remove him, and demanded that he
be continued and retained in his present position. Assum-
ing, as the appellant did, that the order given to him
was the first step towards getting rid of him, I do not see
how he could safely do less or otherwise than he did.
The right of self-defense against unlawful attack is uni-
versally conceded whether exercised in behalf of person
or property and it almost savors of unintentional humor,
this serious contention that the appellant was guilty of
insubordination and insulting conduct because he did not
in a spirit of cordial receptivity accept complainant's invi-
tation to assist in preparing for his own official decapita-
tion. It is true that it is now argued that appellant
quite misconceived his superior's order and that it did not
contemplate his removal. I am inclined to think, how-
ever, that subsequent events are the best answer to this
argument and indicate that the appellant diagnosed the
situation with entire accuracy.

The second charge now being considered is to the effect

simply that appellant denied that he had signed the payrolls for certain employees when in fact he had so signed them. It is not in any way charged that he improperly signed these payrolls or that he willfully or for any purposes of fraud or deception denied signing them, or that his denial was made to anybody having official relationship to the facts, or that the city in any way suffered either from his signing the payrolls or from the denial that he had signed them. The very worst construction to be placed on his conduct under this charge is that at some time in an ordinary conversation with an ordinary person he was a victim of the very ordinary human infirmity of forgetting on a single occasion that he had performed a certain act, which we may assume was one among a great number of official duties. Removal for such a cause would establish a test for continuance in public employment decidedly beyond anything which we have as yet attained.

This leaves for consideration the first charge and ground assigned for removal, and this presents the only debatable question in the case. As already stated, this charge accused the appellant of "insubordination" because he ordered men under his control to do certain work "not only without the direction or authority of the Chief Engineer of the department but without the knowledge of the latter." Some preliminary insight into the real merits of this accusation is afforded by a comparison of the date of the alleged offense with the date of the charges. This shows that nearly two years had elapsed between the two and one is forced to conclude at the outset that either for this period the complainant ignored or condoned the alleged offense, or was so derelict in his duty that he did not know what his important subordinates were doing, or, and this is probably the real explanation, did not at the time deem to be offensive and insubordinate the acts now claimed by him to have been so.

When we proceed further and analyze with reasonable closeness the language of the charge and assignment of reasons for removal, this last notion is confirmed for we perceive that the facts stated therein as constituting insubordination and misconduct do not amount to any such offense. Insubordination certainly implies intentional, willful disobedience. But nothing of that kind is alleged and found here. The most that can reasonably be spelled out is that appellant directed certain men under him to do perfectly proper work in the department with which he was connected without having the express and affirmative direction or authorization of his immediate superior and without notifying him thereof. This falls far short of stating a case of insubordination and consequent misconduct.

We not only may but ought to presume that in a department such as this a person occupying a position so high as that of assistant engineer would be authorized and expected by the general rules and practices of the department to exercise some discretion and to do some things in the absence of express directions and there is nothing which saves this charge from this presumption.

Again, it appears without dispute that what the appellant did was authorized by the deputy commissioner. Without deciding that we may look at the evidence and hold as a matter of law that this explanation should have been accepted as satisfactory and sufficient, we may yet utilize it as an illustration of what we can assume might happen in the department. There were a commissioner and deputy commissioner both of whom were the superiors not only of appellant but also of the complainant. Naturally they would have power to give directions to the former which would be controlling without, or even in contradiction of, any given by the latter. I see no basis for the presumption that they did not exercise this power and give such orders on this occasion, and the charge and

8

finding are discreetly lacking in any word which would cover this point.

And, lastly, I am not prepared to hold that the performance by an employee on a single occasion of proper work in his general field of employment in the honest belief that it was his duty to perform it — and these features are not challenged here — would make a case of insubordination or misconduct justifying his discharge even though it should turn out that the work was strictly beyond the line of his duty and authority.

Having such considerations as these in mind it does not seem to me that we should approve as sufficient the reasons assigned for the removal of appellant. Of course, I accept the principle which has been established that the power of removal in such a case as this is very broad, and the right of review very narrow. These rules are doubtless essential to good service and entirely proper. But their liberality in favor of the superior furnishes all the greater reason why such requirements as they do impose should be fairly and honestly observed. If an employee has been guilty of acts which constitute insubordination or any kind of misconduct sufficiently serious to warrant his removal there ought to be no difficulty in so charging and finding. The acts relied on and set forth as constituting misconduct ought on a fair interpretation to make it out. An employee ought not to be punished as for willful disobedience on a statement of facts so meagre and ambiguous that they are just as consistent with fidelity and obedience as with the opposite qualities. That is this case. Everything which is charged and assigned as a reason on this point for dismissing appellant might be true, and yet he have done nothing which amounted to insubordination or misconduct, and such a situation ought not to receive our approval.

It would not be difficult to believe that this meagreness in charge and statement was not the result of inadvertence or unskillfulness, but rather of discretion in the face

of necessity. While it may not be part of the strictly legal aspects which we are required to examine, we can hardly avoid seeing behind this attempt to remove appellant a background of friction between his superiors, the deputy commissioner and chief engineer, in which appellant apparently recognized the higher authority of the former and thereby antagonized the latter. This was doubtless an unfortunate situation, but I hardly see how he could have done otherwise, and certainly it did not furnish a sufficient justification for making him a conspicuous sufferer in the conflict between his superiors, which in some measure was being carried on over his unlucky and presumably unwilling shoulders.

The orders of the Special Term and Appellate Division should be reversed and the application for the writ of mandamus granted, with costs in all the courts.

CULLEN, Ch. J., VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur; HAIGHT, J., absent.

Orders reversed, etc.