PEOPLE ex rel. MITCHELL v. LA GRANGE et al., Board of Fire Com'rs.

(Supreme Court, Appellate Division, First Department. March 13, 1896.)

MUNICIPAL OFFICER—HEAD OF BUREAU—REMOVAL—HEARING.

> Under Consolidation Act, § 48, entitling a head of a bureau, not to a regular trial before dismissal, as in case of a police officer or fireman, but to information as to the cause of his proposed removal, and to an opportunity of making an explanation, the cause assigned must be some neglect of duty, or something affecting his character or fitness for the position. If the cause is assigned on facts within the knowledge of the commissioners, they should so inform accused; and, if they assign the cause on information alone, they should furnish him with the nature thereof: and his explanation must not only be received, but acted on in good faith.

Certiorari on the relation of James Mitchell to review the proceedings of O. H. La Grange and others, composing the board of fire commissioners of the city of New York, resulting in dismissal of relator from the position of fire marshal in the city of New York.    Action of commissioners annulled.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

William B. Ellison, for relator.

William L. Findley, for respondents.

BARRETT, J.    The cases where the dismissal of police officers and firemen have been reviewed upon certiorari are inapplicable here.    These officials are entitled by law to a regular trial, and the court, upon certiorari, is authorized to review the testimony to the extent and in the manner provided in section 2140 of the Code of Civil Procedure.    No such right to a formal trial upon evidence is given to the head of a bureau in any of the departments of the city government.    The provision of section 48 of the consolidation act limits their right in this regard to information as

to the cause of the proposed removal, and an opportunity of making an explanation. It is well settled that the commissioners may exercise their power of removal upon facts within their own knowledge, or upon information which they have received, and that testimony is not required to be taken as to the basis of their action. People v. Thompson, 94 N. Y. 451. It is equally well settled that the cause assigned must be substantial, and not shadowy; and that the explanation must be received and acted upon in good faith, and not arbitrarily. To be substantial, the cause assigned must be some dereliction on the part of the subordinate, or neglect of duty, or something affecting his character or fitness for the position. People ex rel. Munday v. Fire Com'rs, 72 N. Y. 445; People ex rel. Sims v. Fire Com'rs, 73 N. Y. 440. It is no cause of removal that some other man is a better man than he, or more congenial to the appointing or removing power. Allen, J., in the Munday Case, 72 N. Y. 449. If the cause assigned is not substantial, the removal is invalid. If it is substantial, the commissioners may rest upon it without legal proof. If, however, they assign the cause upon facts within their own knowledge, they should so inform the accused. If, on the other hand, they assign such cause upon information alone, it would be but fair and just to furnish the accused with the nature of such information. How else can he "explain"? The opportunity of explanation is his sole, and somewhat meager, right. For that very reason it should be carefully guarded and enforced. The origin of the charge should not be so veiled as practically to deprive the accused of making his explanation advisedly, and of presenting it fully and thoroughly. "An explanation," said Allen, J., in the Munday Case, "may consist either of excusing any delinquency or apparent neglect or incapacity,—that is, explaining its unfavorable appearances, or disproving the charges." To do this efficiently the accused must not have to grope in the dark. He should know, not only the technical charge, but upon what, in fact, it is based. It is apparent that, to enable the accused thus to explain, he must be apprised, not only of the general charge, but of the specification. He must know, too, whether his explanation should be addressed to removing some personal misunderstanding of the commissioners, or to dissipating unfavorable appearances stamped upon their minds by inaccurate information, or by a mistaken view of accurate information. All this proceeds upon the theory that the commissioners are acting in good faith, and are not seeking to evade the statute. They are aware that the provision in question was, as Allen, J., observes in the Munday Case, supra, "intended as a substantial limitation" upon their "general power of removal, and to secure the continuance in office of the person named until a reasonable cause, other than the pleasure of the heads of the departments, or a change in the political character of the majority, should exist for their removal." This wholesome doctrine was laid down as far back as the year 1878. It is accentuated by the spirit of later legislation, especially by the modern civil service acts.

It is apparent that, to give due effect to the act under consid-

eration, not only must the charge be substantial, and the specification clear, but the explanation should be received and acted upon in good faith. This explanation is not a mere form to precede a predetermined removal. The minds of the commissioners must be open to the explanation. They must act upon it fairly and reasonably. They cannot arbitrarily disregard it. If it is such an explanation as should satisfy any fair-minded man, if it admits of no reasonable inference of dereliction or incompetency, it cannot be denied its due effect in acquitting the accused, and securing his continuance in office. The commissioners must be satisfied with the explanation if it is clearly satisfactory. The law requires good faith even where the parties have contracted for personal satisfaction. A good reason must then be assigned for dissatisfaction. The doctrine is that "that which the law will say a contracting party ought in reason to be satisfied with, that the law will say he is satisfied with." Boiler Co. v. Garden, 101 N. Y. 390, 4 N. E. 749. A different rule applies in matters of taste and fancy. There the contract is subject to the "pleasure" of one party. These rules should be applied to public relations quite as liberally as to private contracts. The law which we are considering in effect declares that the commissioners shall not, in the particulars under discussion, gratify their fancy, serve their personal convenience, or satisfy their individual preferences, and, consequently, that they shall not remove at their pleasure. It impliedly declares, on the contrary, that before they remove they must be satisfied that there is just cause for removal. Their "satisfaction," consequently, must not be a pretense. If, upon the explanation, there is no reasonable doubt of the innocence of the accused, the law will not permit the commissioners to frustrate its purpose by the mere bald assertion of doubt.

This brings us to the consideration of the merits of the case at bar. The forms of law were technically complied with. Causes of removal were assigned, and an opportunity of explanation was afforded. We have carefully analyzed these causes, and we are of opinion that they are unsubstantial, and, in view of the relator's explanation, wholly without merit. We will examine them seriatim. They are four in number. The first is undoubtedly the least trivial. It charges the relator with having permitted an assistant fire marshal, named Frank, and a detailed detective policeman, named Lenz, to remain on duty in his bureau for years after he was informed of their unworthiness and unfitness; also that, while in almost daily contact with them, he failed to discover that they were the associates and allies of incendiaries; and that he only permitted Frank to resign, and only requested that Lenz be relieved from duty, after Frank was known to one of the board of underwriters to be corrupt. These charges are based upon what happened prior to the advent of the respondents as fire commissioners. Consequently the charges were not based upon their own personal knowledge or observation. Indeed, the charges are in terms made solely upon information. What that information was, the notice did not convey to the relator. He asked for it, and it

was refused him. He was told that the "allegations were suffi-
ciently specific to inform his mind." Yet the "information" was
subsequently spread upon the record of the final judgment of re-
moval.   The importance of that information to the accused—nay,
the absolute necessity that he should have it in order to make
any useful explanation—is apparent when we consider what it
was.   It consisted (so say the respondents) of "evidence furnished
by the records of the department, investigation made by and fur-
nished to its members in the discharge of their official duties, and
testimony given by the relator before a committee of the senate,"—
testimony given over four years before these charges were made.
Thus the relator was really denied an opportunity of explanation.
What testimony had the relator given before a senate committee?
What appeared in the records of the department?   What investiga-
tion was made by the commissioners?   What evidence was fur-
nished to them?   Not a word of all this was intimated to the re-
lator.   Not a word is now furnished to the court.   The record is a
blank page as to the very matters upon which the relator has been
thus condemned unheard.   He has not only been condemned upon in-
formation which was denied him, but upon charges which were
never served upon him; for we find that the particular charge
which we are considering was amended, strengthened, and ampli-
fied in the judgment.   We find, too, distinct and additional charges
embraced in the findings, charges of a sweepingly general charac-
ter, which were never served upon the relator, and which presum-
ably he heard of for the first time when he read his conviction.
The charge which was served upon him proceeds upon the inaccu-
rate assumption that the relator had power to prevent Frank and
Lenz from remaining on duty in his bureau.   The rest, in its vague
and general form, amounts to but little more than an accusation
that the fire marshal was not gifted with powers of divination, that
he lacked intuition, and that he was not as suspicious or shrewd as
he should have been.   The entire charge ignores the fact that the
fire marshal had no power to appoint, retain, or remove either of
these men.   The judgment ignores the uncontradicted explana-
tion that the fire marshal had no control over them; that they
were put where they were by his superiors; that they were ac-
tually assigned to specific duty by these superiors; that Frank
was actually in charge of the bureau when the relator was ap-
pointed fire marshal; that he was left no discretion as to the as-
signment of his assistants; and that the moment he discovered
the misconduct of these men he recommended their removal.   The
judgment ignored, too, conclusive evidence of the truth of what
was material in this explanation, consisting of sworn copies of
actual orders of the board of fire commissioners.   It also ignored
the statement of one of the former commissioners to the same ef-
fect.   Having ignored the explanation, it proceeded to develop and
add to the original charges, to specify information which it had
refused to furnish to the accused, and to convict him upon the new
charges as well as the old, and to so convict upon such undisclosed
information in support of both.   It is clear that there was no jus-

tification for removal upon this charge. The case for removal was far weaker than it was in People v. Campbell, 82 N. Y. 247, where the court of appeals held that there must be some evidence (undoubtedly intending by the word "evidence" to convey the idea of some founded ground of removal) to justify a removal; and where there is none the removal is not for cause, and the order may be reversed.

The second charge is open to the same criticism as the first. Having here accused the relator of permitting a newspaper article to be compiled or tabulated from the records of the bureau, they convicted him as well of addressing a communication to the editor of the newspaper, relating to the official bureau of the department, without the knowledge or approval of the board. They then spread upon the judgment record the information upon which the charges—those which were served and those which were not served—are supposed to be supported. Again the information consists in part of undisclosed records of the department. The charge which was served constituted no offense. The article in question was a valuable contribution to knowledge which the public was entitled to. It could not possibly have hindered the efficient working of the department; and it was an aid to those who were endeavoring to suppress incendiarism in this city. But, even if the relator should not have permitted the compilation from the records of his bureau, the explanation was complete. He did not permit such compilation, and the undisclosed information on that head was misinformation. The fact was that the article was compiled from the published and public records of the department and from the public records of the district attorney's office. The entire case on this head was baseless.

The third and fourth charges are still weaker. The third charge states no offense justifying a removal. On the contrary, it charges commendable zeal on the part of the fire marshal. The charge is that he asked the comptroller if money could not be set apart to pay witnesses in arson cases, and, finding that that could not be done, he made the same suggestion in substance to the board of underwriters, which the latter adopted. Why should he not ask information of the comptroller as to whether money could be obtained from the treasury to pay witnesses in cases of arson, and why should he not permit the board of fire underwriters to pay out money for such purposes? In the first cause assigned he is charged with doing too little; in this "third cause" he is charged with doing too much. In neither case is there a genuine fault of commission or omission. Even as to this third charge there is a complete, though quite unnecessary, explanation. The relator never did what he was charged with doing. Again the undisclosed information must have been inaccurate, for the denial is supported by the affidavits of both the comptroller and the superintendent of the survey bureau of the board of fire underwriters, and is absolutely conclusive upon the record.

It is difficult to speak moderately of the fourth cause. It amounts to a charge that the fire marshal aroused a spirit of jeal-

ousy on the part of police detectives by claiming—certainly with some show of justification—the credit for securing convictions in arson cases. That, says the charge, alienated the good will of these detectives, and this renders difficult their hearty and cordial co-operation. One would suppose that this was a ground for disciplining the detectives, rather than the relator. It is difficult to understand why this apparently faithful servant of nearly seven years' standing should have been removed because he is proud of his success, and because the detectives do not like his self-appreciation. He might well be pardoned for some slight self-appreciation in view of the sworn statement of the assistant district attorney, Mr. Davis, to the effect that his duty had been both intelligently and energetically performed, and that his services were of great value to the cause of the people; also in view of the resolution of the board of fire underwriters, adopted some four months prior to these charges, that their thanks, and the thanks of the citizens of New York, were due to Fire Marshal Mitchell for his sagacious and energetic labor in the detection and punishment of the bands of incendiaries who have recently caused so many fires in this city.

Upon the entire record it is evident that a grave injustice has been done to the relator; that the charges against him were mere formulæ for removal; and that his explanations should have satisfied fair-minded men that he was deserving of commendation, not condemnation.

Upon both the facts and the law the action of the board should be annulled, and the relator reinstated, with $50 costs and disbursements. All concur.

─────────

(1 App. Div. 140.)

ERIE & C. N. Y. RY. CO. v. WELCH et al.

(Supreme Court, Appellate Division, Third Department. January 27, 1896.)

CONDEMNATION PROCEEDINGS—PETITION—SUFFICIENCY.

> Application for condemnation of land, made on petition which fails, as required by Code Civ. Proc. § 3360, subd. 7, to state that the petitioner intends to complete the work for which the land is sought to be condemned, is properly denied on oral objections of defendant.

Appeal from special term, Broome county.