(17 App. Div. 483.)

### PEOPLE ex rel. MASON v. CRUGER et al.

(Supreme Court, Appellate Division, First Department. May 14, 1897.)

1. OFFICERS—REMOVAL—OPPORTUNITY TO ANSWER CHARGES.

Laws 1882, c. 410 (Consolidation Act) § 48, provides that certain clerks in the service of New York City shall not be removed until they are informed of the cause of the proposed removal and an opportunity given to make an explanation, but no provision is made for a formal trial. *Held,* that the authorities making a removal are not required to hear any testimony, but they are only required to inform such clerk in good faith of the nature of the charges against him, and of the facts, so far as may be necessary to enable him to make an explanation.

2. SAME—SPECIFICATION OF CHARGES.

On a proceeding to remove relator from a clerkship in one of the departments of New York City, under Laws 1882, c. 410, § 48, which requires information to be given of the cause of the proposed removal, with an opportunity of making an explanation, it appeared that relator had been notified that it was proposed to remove him for reasons a general statement of which was contained in the notice, and that he could have a hearing at a certain time. When he came before the board the question was asked whether specific charges were to be made, the reply to which was that it was simply "a general letter." Relator then said that he only came to answer specific charges, to which the president of the board replied that he would go into the details of the charges. A schedule was then presented relator, showing the prices of articles purchased by or for the city, which were claimed to be excessive. He gave an explanation as to some of them, and stated that he was not able to answer as to the others. Other charges were made in detail, which relator answered by saying that he had nothing to do with the matters involved. *Held,* that relator was given a hearing as required by law, and that the action of the commissioners in removing him would not be disturbed.

O'Brien and Parker, JJ., dissenting.

Certiorari by Francis H. D. Mason to review the proceedings of Stephen V. R. Cruger and others, commissioners of parks, dismissing relator from his position as clerk. Affirmed.

The facts are stated by Mr. Justice O'BRIEN as follows:

As shown by the petition and return, from September, 1878, until May 31, 1896, a period of over 17 years, the relator was a clerk of the board of parks. He commenced at a salary of $2 a day, and was finally receiving $2,000 per annum. After several requests to resign, the relator received a letter from the president of the board, as follows:

"New York, May 15th, 1896.

"F. H. D. Mason, Esq., The Arsenal—Dear Sir: I have recommended to my colleagues in the park board your discharge from the department as clerk, on account of general inefficiency and neglect of your duties, the payment of exorbitant prices for supplies, carelessness in the audit of bills, and the purchase of inferior articles. If you desire it, you will be given a hearing before the board at its meeting on Monday next, at 4 o'clock.

"Yours, very truly,       S. V. R. Cruger, President."

In reply the relator wrote:

"I am in receipt of your notification, dated May 15th, of your intention to recommend my discharge to your colleagues, and stating, if I desired, a hearing would be given me. I would respectfully request that the opportunity be so granted."

Thereupon the president wrote to the relator:

"I am in receipt of your letter of the 18th inst., in reply to mine of the 15th, stating that you desire an opportunity to be heard before the board. We should have given you that opportunity to-day, but, owing to the unexpected

absence of Commissioner McMillen, it was decided to postpone the matter until Monday afternoon next, 25th inst., at 4 o'clock, when you will be given an opportunity to be heard."

On the 25th of May the relator appeared before the board with his answer. The president read his letter of May 15th, and to the inquiry by another commissioner whether specific charges were to be made, or general charges, the president replied, "It was simply a general letter." Thereupon the president said, "I will go into the details of these charges," which were the ones mentioned in his letter of May 15th; and he proceeded to make a statement, during which he read from a paper which contained less than 50 items of articles, such as scoop shovels, ax handles, corn brooms, mop handles, etc., extending over a period of three years, 1894, 1895, and 1896, and concerning which he stated: "I have been satisfied for a long time that we were paying a great deal too much for a great many of the articles." Apart from this statement and the speech of the president, nothing was presented against the relator, and he, in reply, filed a written answer, in which, as to the charge of general inefficiency, he pointed to his long service and promotions. To the other charges his answer was as follows: "As to the charge of neglect of duty, in the absence of specifications, my answer is a denial. The statement that I paid exorbitant prices for supplies, again, in the absence of specifications, I cannot refute. The other charge, carelessness in the audit of bills, has naught to do with me, inasmuch as I am not the auditor, nor in any way responsible for the record of bills. My connection with them is only drawing the order, which is simply the initial step, and certifying the prices. As to the charge of having purchased inferior articles, in the absence of specific charges, it is impossible to make reply. * * * If I am furnished with specifications of the charges, I will answer them in detail, and I trust that time will be given me to do so." The reading of the relator's answer ended the hearing, and the return shows that at once, upon its termination, the relator not being present, the following was entered upon the minutes: "F. H. D. Mason, clerk, appeared before the board, and was heard in answer to charges of general inefficiency, neglect of duty, payment of exorbitant prices for supplies, carelessness in comparing and passing on bills for payment, and the purchase of inferior articles." On the same day, at the same meeting, the relator not being present, by resolution of the respondents, the relator was discharged from the service, to take effect May 31, 1896.

Argued before RUMSEY, WILLIAMS, O'BRIEN, INGRAHAM, and PARKER, JJ.

Walter Large, for relator.
Theodore Connoly, for respondents.

RUMSEY, J.   Down to the 25th of May, 1896, and for several years before that time, the relator was a regular clerk in the office of the commissioners of parks of the city of New York. On that day he was removed by a vote of the commissioners of parks. He has sued out this writ of certiorari to review their proceedings so removing him, alleging that the rights assured to him by the statute were not protected, and for that reason their proceedings should be reversed.

The relator, being a regular clerk, could not be removed until he had been informed of the cause of the proposed removal, and had been allowed an opportunity of making an explanation. Laws 1882, c. 410, § 48. The relator seems to suppose that this statute gives him the right to a trial, but in that supposition he is entirely mistaken. The statute makes no provision for a formal trial. It does not require that witnesses should be produced, or that the officer should be permitted to cross-examine them, or that he should be allowed to produce witnesses or be heard as upon the trial.

People v. Thompson, 94 N. Y. 451. The wording of the statute necessarily implies that the commissioners propose to remove the clerk, unless the explanation which he is called upon to give shall be a satisfactory one; and that involves, necessarily, the fact that to a certain extent they have determined already upon his case. They are not required to take testimony to enable them to do this, but they may act upon their own information, which has been procured from time to time in the performance of their official duties. People v. La Grange, 2 App. Div. 444, 37 N. Y. Supp. 991. All that is required of the officials to comply with this statute is that the right of explanation assured to the clerk by virtue of it shall be given to him in good faith; that he shall be informed of the nature of the charges against him, and of the facts so far as may be necessary to enable him to give an explanation of them. When that has been done his rights have been preserved. If, as the result of the explanation, it is fairly to be assumed that the cause of complaint against him was some dereliction or general neglect of duty, affecting his fitness for the office, the commissioners are justified in removing him, unless the explanation is one which a reasonable man ought to accept as satisfactory. People ex rel. Munday v. Fire Commissioners, 72 N. Y. 445. So, it will be seen that the substantial question to be examined in every case is whether the complaints made by the commissioners against the clerk whose removal is proposed are of such a nature that his removal would be proper on account of some inefficiency or dereliction of duty, and then whether he has a sufficient opportunity for an explanation, and whether that explanation, when made, is one with which the commissioners ought to have been satisfied.

The writ of certiorari which, for all the purposes of this case, must be assumed to be conclusive and acted upon as true (People ex rel. Sims v. Fire Commissioners, 73 N. Y. 437), shows that, before the 15th day of May, the president of the board had recommended to his colleagues the discharge of the relator for general inefficiency and neglect of duties, payment of exorbitant prices for supplies, carelessness in the auditing of bills, and the purchase of inferior articles. On that day the relator was advised that such recommendation had been made for those reasons, and that, if he desired, he could have a hearing on the 18th day of May, at the regular meeting of the board. This letter was received by him on the 16th, as he says; and on the 18th he replied to it, acknowledging its receipt, and saying that he requested an opportunity for a hearing. At that time he made no claim that he was not aware of the exact charges against him, or that he desired particular specifications to enable him to protect himself from them; but he expressed himself ready for a hearing at the time fixed by the commissioners. It appears from the correspondence which is contained in the return that the hearing was postponed for one week, and until the 25th of May, and of that postponement the relator was advised on the 18th. He appeared before the board on the 25th, and the proceedings which were then had are set out at length in the return. The nature of the charges was stated. It was asked by one of the board

whether specific charges were to be made, or general charges, to which it was replied that it was simply "a general letter." Thereupon the relator stated that he only came to answer specific charges as made, to which the president of the board replied that he would go into details of those charges. It appears that, with regard to the payment of exorbitant prices, the president had there, and presented to the relator, a schedule of the articles for which it was claimed that exorbitant prices had been paid, and also the prices which ought to have been paid. This schedule was shown to the relator, and he proceeded to make an answer to those charges. It was stated by him, in regard to those specifications, that he was not able to answer many of them, and, as to some of them, he gave such explanation as he thought was proper. Those explanations are set out at length in the return. Some other detailed charges were made by the president to him, and in regard to them he made an explanation. As to some of them, he denied that he had anything to do with those matters, saying that he was not at all responsible for them, and, in the nature of things, no further explanation could be given by him in that regard. Whether that explanation is true or not there is no evidence to show, and it is to be assumed, in view of all the facts set out in the return, that the commissioners did not receive it as a true explanation. If the charges had been based solely upon the details which were presented to him at that time, the specifications contained in these details were clearly sufficient to warrant the action of the board in removing him, unless his explanations were satisfactory; and it was for them to say whether those explanations were sufficient, in view of what they knew of the manner of doing business of the department, and of the duties of the relator. When it was charged against him that there was carelessness in the auditing of particular bills which he should have audited, and by reason of that carelessness the commissioners were brought into conflict with other departments of the city governments, that, clearly, was a sufficient charge of inefficiency to warrant his removal if it was true; and when he said, in defense, that it was a matter which was not within his duties, the sufficiency of that explanation clearly was for the commissioners, and it is just as clear that no further explanation could have been given, because, if he had no duties in regard to the matter, it was certainly not a fault to do nothing about it. Upon the whole case, we are quite clear that, although there may have been some details as to which he was unable to give sufficient explanation, yet as the specifications which he did attempt to explain were sufficient, if not properly explained, to warrant his removal, and to show that the charges against him were not frivolous, we cannot say that the commissioners were not justified in refusing to accept those explanations, and in acting upon those charges alone, as they may have done.

The proceedings of the commissioners are therefore affirmed, and the writ dismissed, with costs.

WILLIAMS and INGRAHAM, JJ., concur.

O'BRIEN, J. (dissenting).    The validity of the proceedings which resulted in the relator's dismissal is before us for review.    The charges, though general, were sufficiently grave, if true, to justify the action of the board; and if a legal hearing was accorded to the relator, with an opportunity of making an explanation, secured him by section 48 of the consolidation act, then we are not concerned with the conclusion that may have been reached as to the merits of the explanation, because that is a matter of which they were the judges, and with reference to determining which they are vested with discretionary power.

As said in People v. Thompson, 94 N. Y. 451:

"It seems to have been intended that the commissioner should exercise this power upon facts within his own knowledge, or based upon information received by him, after communicating to the relator his purpose of removing him, with notice of the reason why he proposed to take such action, and after allowing him an opportunity to make explanation as to the facts assigned as grounds for the removal."

And as said in People v. La Grange, 2 App. Div. 444, 37 N. Y. Supp. 991:

"An explanation may consist either of excusing any delinquency or apparent neglect or incapacity; that is, explaining the unfavorable appearances, or disproving the charges. To do this efficiently, the accused must not have to grope in the dark. He should know not only the technical charge, but upon what, in fact, it is based. It is apparent that, to enable the accused thus to explain, he must be apprised, not only of the general charge, but of the specification. He must know, too, whether his explanation should be addressed to removing some personal misunderstanding of the commissioners, or to dissipating unfavorable appearances stamped upon their minds by inaccurate information, or by a mistaken view of accurate information."

Here the charges were most general in their nature, and what the relator asked, and what we think he was entitled to before being called upon for an explanation, or before he would be in a position to give an explanation, was some specifications.    None, however, was furnished, unless it be the statement read by the president upon the hearing, which, even if it be regarded as sufficient, is not now material, because the relator never saw it until this return was made.    It was produced upon the hearing, it is true, for the first time, and read; and the only knowledge of its contents that the relator ever got was what he could gather from hearing it read offhand by the president of the board.    Though he desired to answer the charges in detail, and said he trusted that time would be given him to do so, the opportunity was not accorded him; but the president, apparently satisfied with his own knowledge, went through the form of giving the relator a hearing, but left him entirely in the dark as to what he was to explain.    The record shows clearly that the president of the board concluded that he had sufficient information to justify his removing the relator; and that he had predetermined upon that action is also clearly made to appear.    While there is nothing in the act which forbids this condition of mind on the part of the commissioner, he must, nevertheless, not proceed in such a way as to show that his mind is shut

to all explanation, and that he is indisposed to accord to the person upon trial before him the rights which the statute grants.

As said by Barrett, J., in People v. La Grange, supra:

"The opportunity of explanation is his sole and somewhat meager right. For that very reason, it should be carefully guarded and enforced."

And again:

"This explanation is not a mere form to precede a predetermined removal. The minds of the commissioners must be open to the explanation. They must act upon it fairly and reasonably."

In our view, therefore, it clearly appearing that the right which the relator had of explanation was not accorded him, the proceed- ·ing should be annulled, and the relator reinstated, with costs.

PARKER, J., concurs.