PEOPLE ex rel. LAWSON v. COLER.

(Supreme Court, Appellate Division, Second Department. April 18, 1899.)

1. MUNICIPAL CORPORATIONS—OFFICERS—REMOVAL BY COMPTROLLER—INCOMPETENCY.

The removal, for incompetency, by the comptroller, of a collector of city revenues, will not be disturbed where he offered no explanation for inability to balance his books, and could not add correctly his collections.

**2. SAME—MEMBER VOLUNTEER FIRE DEPARTMENT—PLEADING.**

Under Laws 1892, c. 577, § 1, providing that no person holding an appointive position in any city who has served the time required by law in the volunteer fire department, or shall have been a member at its disbandment, shall be removed except for cause, after hearing, a person claiming such protection must allege either that he has served the time required by law in the volunteer department, or was a member at its disbandment.

**3. SAME—FORMAL TRIAL.**

Under Laws 1898, c. 186, § 13, providing that, if any person holding a position in the civil service of the city shall be removed, he shall have the opportunity to make an explanation, no formal proceeding is contemplated; hence the charges preferred need not be verified, witnesses need not be sworn, and on removal of an officer from the comptroller's department the explanation may be heard before a deputy comptroller.

Certiorari to review the determination of Bird S. Coler, comptroller of the city of New York, removing Jeremiah Lawson from the position of inspector in the bureau for the collection of city revenue and markets in the borough of Brooklyn. Confirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

George W. McKenzie and George P. Beebe, for relator.

William J. Carr, for respondent.

WILLARD BARTLETT, J. In August, 1898, the relator was an inspector in the bureau for the collection of city revenue and markets for the borough of Brooklyn in the finance department of the city of New York. He had been appointed to this position as the result of a competitive examination. On August 12, 1898, he was notified by the assistant superintendent of markets in the borough of Brooklyn to appear before the comptroller on the 15th day of that month, and answer charges for incompetency in Wallabout Market. A copy of these charges had been delivered to him on the same day. He was accused of incompetency in four respects: (1) In having failed to comply with the request of the chief clerk to have his book balanced in July early enough to give ample time to prepare the August receipt book; (2) in presenting an incorrect book to the assistant superintendent of markets, showing a deficiency of $30, and in being confessedly unable to balance said book; (3) in having failed to have it balance correctly after having had it in hand eight days for that purpose; and (4) in presenting his daily statement, prepared in different hands, showing that others made out his reports. The return shows that a hearing was had before the deputy comptroller of the city of New York on August 15, 1898, at which the relator was questioned in regard to the several specifications already mentioned, and was apparently allowed to explain the same as fully as he desired. He admitted that his book showed a deficiency of $30, and that he was unable to balance it. He could not remember whether it had been returned to him to have it balanced correctly, and he had kept it eight days over time, or not. He acknowledged that some of his reports were written by persons other than himself. He was requested to add up in his book the items which he had collected thus far in the

month, and as the result gave, upon his first attempt, $6,348.88, and upon a second trial $6,519.65. The minutes show that the deputy comptroller added the same items, and found the total to be $6,-619.69. The mere fact that some of the relator's reports were written by others than himself would not, in our judgment, suffice to establish incompetency; but we cannot say that the comptroller was wrong in holding the relator to be disqualified for his position when it appeared that he was unable to balance his account book, and offered no explanation of his inability in this respect; and when it further appeared that he could not even add up correctly his collections for part of a month.

The only condition precedent to the right of the comptroller to remove the relator was that he should have an opportunity to make an explanation. The statute prescribing this condition is chapter 186 of the Laws of 1898, the thirteenth section of which provides that, "if a person holding a position subject to competitive examination in the civil service of the state or of a city shall be removed or reduced the reasons therefor shall be stated in writing and filed with the head of the department or other appointing officer, and the person so removed or reduced shall have an opportunity to make an explanation." It is now settled that this statute applies to the city of New York. People v. Dalton, 158 N. Y. 175, 52 N. E. 1113. The relator claims, however, that he is also protected from removal, except upon cause shown, after a hearing had, under chapter 577 of the Laws of 1892. That act, it is true, does restrict the power of removal in the case of volunteer firemen "who shall have served the time required by law in the volunteer fire department of any city, town or village in the state, or who shall have been a member thereof at the time of the disbandment of said volunteer department." The allegations of the petition do not suffice to show that the relator comes within the class thus specified. The only averment on the subject is "that petitioner is a volunteer fireman, and was a member of Hose Company No. 31 of the city of New York, now borough of Manhattan." There is no allegation that he has served the time required by law in the volunteer fire department, or that he was a member thereof at the time of its disbandment. The act of 1898, in providing that the person whose removal is contemplated shall have an opportunity to make an explanation, implies that, if the explanation disproves the existence of the supposed reasons for removal, the accused person will be allowed to retain his position. Whether, if it should appear in such a proceeding as this that an explanation had been offered which clearly ought to have been accepted by the superior officer as satisfactory, the statute would give the courts any right to interfere with the determination, need not be decided in the present case, for the act of removal is clearly beyond judicial control when, as here, the reason assigned for it is a good one, and the explanation offered shows that it has a sufficient foundation in fact.

The proceeding is attacked on several other grounds which require to be noticed. The charges were not verified under oath, no

witnesses were sworn, and the hearing was had before the deputy comptroller, instead of before the comptroller himself. These objections would be substantial if the opportunity to make an explanation, provided for by the act of 1898, was in any sense a trial like a proceeding for the removal of a police officer, in which the witnesses must give their testimony under oath, and in which a conviction of the accused upon the charge which is preferred against him must precede removal. The act of 1898 contemplates no such formal procedure. It requires nothing more than that the reasons inducing the contemplated removal shall be communicated to the person proposed to be dismissed, and that he shall be fairly heard, if he desires to be heard, in his own behalf, to explain any alleged misconduct, neglect, or incapacity on his part. We do not think it is necessary that the explanation provided for by the law should be made personally to the head of the department in which the person is employed. It seems to afford adequate protection if made to a principal deputy, who communicates it to the superior officer, by whom the removal must actually be made. The determination of the comptroller should be confirmed.

Determination confirmed, with $10 costs and disbursements. All concur.