PEOPLE ex rel. KENNEDY v. BRADY, Building Com'r.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

COMMISSIONER OF BUILDINGS—MESSENGERS—REMOVAL FROM OFFICE—JUSTIFI-
    CATION—EVIDENCE—SUFFICIENCY.

Relator, a messenger in the department of buildings, under civil service rules, reported one morning, about one year before removal, without the proper badge on his hatband. On another occasion, being directed to serve a notice on B., he went several times to B.'s house, failing each

time to find him at home. On reporting these facts to his superiors, he was directed to serve the notice the following afternoon, if possible, and, if not, the next morning. He made a trip to the house that night, and again found B. absent, and was informed by B.'s wife that there was no use in waiting or coming there again, for he could not see B. Believing that it would be useless to call again, he failed to go the following morning, and reported his failure to the office. *Held*, that this evidence does not show such a dereliction of duty and refusal to obey instructions on relator's part as to justify the action of the commissioner in removing him from office.

Van Brunt, P. J., and O'Brien, J., dissenting.

Certiorari by the people, on relation of James F. Kennedy, against Thomas J. Brady, commissioner of buildings for the boroughs of Manhattan and the Bronx, to review defendant's action in removing relator from his position as messenger in the department of buildings. Commissioner's determination reversed, and relator restored to his office.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Julius M. Mayer, for relator.
Eugene Otterbourg, for respondent.

HATCH, J. The relator was first suspended from duty as a messenger in the department of buildings February 18, 1899, without pay, for failure to obey instructions relating to the delivery of a letter to one Burlingame, and on March 7, 1899, he was served with charges in addition to that stated as ground for his suspension, to wit, charge No. 1, for disobedience of orders, in reporting for duty without wearing full uniform; charge No. 2, the same upon which he was suspended; charge No. 3, for reporting late on February 14, 1899; and charge No. 4, for neglect of duty,—and he was notified that it was proposed to remove him from office upon such charges. At the time of his removal the relator was holding a place subject to competitive examination, and therefore was entitled, under the civil service act, to an opportunity to make an explanation, which was given him; and the commissioner, having determined that his explanation was not satisfactory, adjudged him guilty of the charges, on the 28th day of March, 1899, and removed him from said office. No question is raised as to the regularity of the proceedings prior to the order of removal, but relator claims that the causes assigned for his removal were not substantial, but trifling, and that the explanations given by him were not received and acted upon fairly, but arbitrarily, and that his removal was not the exercise of a just discretion.

It is settled by the determination of this court in People ex rel. Mitchel v. La Grange, 2 App. Div. 444, 37 N. Y. Supp. 991, affirmed in 151 N. Y. 664, 46 N. E. 1150, that the cause assigned for removal in this class of cases must be substantial, and not shadowy, and that the explanation must be received and acted upon in good faith, and not arbitrarily. And it is there held that, "if the cause assigned is not substantial, the removal is invalid," and that, "to be substantial, the cause assigned must be some dereliction on the part of the subordinate, or neglect of duty, or something affecting his character or

fitness for the position." The opportunity for explanation is the sole and meager right of the subordinate, and, as said in the Mitchel Case, for that very reason should be carefully guarded and enforced. Considering the facts in this case in the light of these and other authorities referred to later, we have reached the conclusion that the removal of the relator was not justified.

The first charge is:

"(1) Disobedience of orders and violation of the rules and regulations governing the employés of the department of buildings, in that of reporting for duty without wearing the full uniform as required by the rules."

There is a department rule requiring messengers to wear insignia on their hats. Of what it consists, does not appear; but it is some sort of badge worn on the hatband when on duty, and taken off when relieved. The proof shows that this charge of dereliction consists in being seen by Mr. Morgan, chief messenger, without this badge, on the morning of June 10, 1898, in the building occupied by the department. He spoke to relator about it, but did not reprimand him, and said nothing more to him about it. This occurred in the morning, as relator was leaving the building. The relator testified that he had no recollection of such an occurrence, and that he did not think Morgan could have seen him without the badge, as he never left the office without asking if things were all right; that all the messengers went to Morgan before going to duty, to ask if everything about them was right; and that he never left the office without his insignia and badge. In any event, it is perfectly apparent that Morgan did not regard the breach of discipline as at all serious, as indeed it could not be. It happened, as alleged, on the 10th day of June, 1898. These charges were preferred March 7, 1899, and nothing had been said about it in the meantime. The relator was not taken to task for it at the time. His superior simply testified that he called his attention to it, and the charge was not mentioned as a ground for relator's suspension. This charge was not substantial, nor was it so supported by the proof offered to establish it as to warrant the removal of relator therefor.

The second charge is:

"(2) Disobedience of orders and violation of the rules and regulations governing the employés of the department of buildings, in that of failing to obey orders to serve notice upon Frederick C. Burlingame on the morning of February 17, 1899."

It appears that Burlingame was an inspector of the department, and that a proceeding had been instituted for his removal, or attempted to be; and prior to the 15th of February an attempt had been made, by some other messenger, to serve notice upon him, but without success. On the 15th of that month the notice was given to relator to serve. It was, as he testified, and it is undisputed, at a time of a very severe storm, designated by the witness as the "big storm." He was instructed to serve the notice personally on Burlingame, and, without going into the evidence in detail, it is enough to say that he went to his house through the storm on that morning, and not finding him at home, and being informed by his wife that he was at an architect's office on 125th street, he returned there and looked for him, but without success. He returned to the house in the evening (he lived at

Nathalie avenue, Kingsbridge road, in the borough of the Bronx), reaching there with difficulty, on account of the storm, found Burlingame not at home, and waited until turned out of the house at about 10 o'clock. He reported the facts to his superiors, and was instructed to serve the notice personally that afternoon, if possible; if not, the next morning. He made another trip to the house that night, in the rain, reaching there about 7:15, without any dinner, but again found Burlingame absent, and was informed by his wife that she could not tell what time he would be in; that there was no use in his waiting or coming up there again; that he could not see him. Under these circumstances, believing that he would be unable to make a service at the house, he failed to go there on the morning of the 17th, as he had been told to do, and reported his failure to the office. Under these circumstances, the proof fails to show anything like a culpable neglect of duty, and admits of no reasonable inference of dereliction or incompetency, but, on the contrary, shows a persistent and painstaking effort to perform his duty. The suggestion of the commissioner, during the hearing, that it looked to him like collusion between messengers,—as if relator was assisting Burlingame by delaying the service,—was entirely gratuitous and unsupported by the facts. Relator testified that he did not know Burlingame, and had no relations of any kind with him, and there was no proof tending to show that he had. As to the other charges, no proof was offered in support of them, and they were disregarded. The explanation given by the relator as to his failure to obey the instructions he had received ought to have satisfied any man who was disposed to act upon it fairly and reasonably. In the Mitchel Case it is held that:

"The minds of the commissioners must be open to the explanation. They must act fairly and reasonably. They cannot arbitrarily disregard it. If it is such an explanation as should satisfy any fair-minded man,—if it admits of no reasonable inference of dereliction or incompetency,—it cannot be denied its due effect in acquitting the accused and securing his continuance in office. The commissioners must be satisfied with the explanation, if it is clearly satisfactory."

This rule the respondent has entirely disregarded.

The case of People v. Welles, 5 App. Div. 523, 526, 39 N. Y. Supp. 50, is an authority to the same effect. It is there held that:

"The explanation offered by the officer was consistent with the proper performance of his duty. And the proof given to sustain the charge did not go to the extent of convicting him of a violation of his duty, so far as to say that what he said in explanation was a mere palliation of an offense which had been established."

The determination should be annulled, and the relator restored to his office, with costs.

RUMSEY and PATTERSON, JJ., concur.

VAN BRUNT, P. J. I dissent. The relator should have obeyed his instructions. It was not for him to say that it was useless. No discipline can prevail in any department if such a rule is to obtain.

O'BRIEN, J., concurs with VAN BRUNT, P. J.