68 NEW YORK SUPPLEMENT  (Sup. Ct.

PEOPLE ex rel. HART v. BRADY, Commissioner.

·(Supreme Court, Appellate Division, First Department. February 25, 1901.)

MUNICIPAL CORPORATIONS—NEW YORK DEPARTMENT OF BUILDINGS—CLERKS—
REMOVAL.
    Where a regular clerk in the department of buildings of New York City
    absented himself without leave from October until the following June,
    and failed to give notice of a change of his address, as required by rule
    22, and charges were made against him, and he was allowed to make an
    explanation, as required by Greater New York Charter, § 1543, declaring
    that no regular clerk shall be removed without an opportunity for an ex-
    planation, his explanation stating that his absence was owing to his
    wife's illness, it was not improper for the commissioner to refuse to hear
    evidence as to the truth of facts contained in the explanation.

Certiorari by the people, on the relation of Thomas M. Hart,
against Thomas J. Brady, as commissioner of buildings of the city
·of New York, to review the action of the respondent in discharging
the relator from his position as clerk in the department of ·build-
ings. Dismissed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, Mc-
LAUGHLIN, and O'BRIEN, JJ.

Julius M. Mayer, for relator.
John D. Quincy, for respondent.

RUMSEY, J. The relator was in 1899 a regular clerk in the em-
ploy of the department of buildings in the city of New York. On
the 4th of October, 1899, he obtained a leave of absence for one
week on account of the serious illness of his wife. On the 12th of
·October,—the day the leave expired,—instead of reporting for duty,
he started for California with his wife, because her physician said
that it was absolutely necessary to do so to preserve her life. He
says that, as he had no opportunity to apply for a further leave of
absence, he sent one Coogan, a friend of his, to the commissioner
with a written request to be granted a further leave of absence of
four months without pay, to be given him for the purpose of en-
.abling him to attend his wife while she was so seriously ill. Not
having reported on the 1st of November, he was suspended by the
commissioner pending charges, the suspension to take effect as of
that date. An effort was made to serve the notice of suspension
upon him, but the messenger to whom it was given reported that,
having gone to his house, he was unable to find him, because he had
gone out of the city, and his whereabouts were unknown. The no-
tice was then sent to him in a registered letter addressed to his
last known place of residence, but it was returned because he was
not found there. This notice was not received by the relator until
the 20th of December, 1899. Having received it, he made no re-
·sponse to it, so far as appears. He came back to the city in the
early part of the month of February, 1900, but did not report for
·duty, and gave no intimation to the commissioner that he had re-
turned. Nothing was done in his case until the month of June,
1900, when a notice was served upon him by the commissioner to

the effect that the commissioner proposed to remove him from his position because of the absence without first obtaining the permission of the commissioner of buildings, and because of his violation of the rules and regulations governing employés in that department, in that he had failed to notify the chief clerk of his change of residence, as required by rule 22 of the general rules. It was further stated that an opportunity to make an explanation in writing in relation to the matter would be allowed him on the 13th of June, 1900, at 3 p. m., at the office of the department of buildings. On that day he submitted an explanation in writing to the commissioner, and subsequently, and on the 20th day of June, he appeared before the commissioner, and asked to introduce testimony to establish the truth of the facts set out in his explanation. That was refused, and the commissioner, not being satisfied with his explanation, removed him; and for the purpose of reviewing that determination this certiorari was issued.

The relator was entitled, before he was removed, to an opportunity to make an explanation with respect to the charges which were preferred against him. Greater New York Charter, § 1543; People v. Brady, 43 App. Div. 60, 59 N. Y. Supp. 322. This opportunity was given to him. He received notice of the charges against him, and that an explanation in writing might be furnished, and he did furnish such an explanation containing the reasons why the relator should not be removed. It will be noticed that this explanation did not deny the truth of the charges, but attempted to explain them. The complaint is that the respondent refused to receive evidence tending to establish the truth of the excuses contained in the explanation for the acts with which he was charged, and which undoubtedly he had committed. To that complaint there are two answers. In the first place, the relator was not entitled to give any evidence whatever to establish the truth of the explanation which he had made. All that he was entitled to have was an opportunity to explain, and that was given him; and when he had offered his explanation, if the charges were material, and serious enough to warrant his removal unless they were sufficiently explained, it was for the commissioner to say whether the excuses were satisfactory, and his conclusion cannot be reviewed by any court. People v. Thompson, 94 N. Y. 451. There is nothing in the case of People v. La Grange, 2 App. Div. 444, 37 N. Y. Supp. 991, to change the rule just mentioned. In that case it was held that the removal was not proper because the charges there alleged were not of any dereliction or neglect of duty, or anything which affected in any way the character or fitness of the relator; and it was said that, if the explanation given was such as to satisfy a fair-minded man, and if it admitted of no reasonable inference of dereliction or incompetency, it should be given its due effect in acquitting the accused. But it was said that, in addition to that, the removal might rest upon further facts within the personal knowledge of the commissioner, or upon information received by him from others. For a man to leave his position in October, 1899, and to remain away without any leave of absence from that time until the following

June, and then to appear only in answer to charges, necessarily involves a serious dereliction of duty, and calls for a full and satisfactory explanation. Whether it was satisfactory or not is not to be determined solely by the exigencies of the situation in which this relator found himself with respect to his wife's illness, but from the standpoint of the commissioner also, who was bound to consider the requirements of the public service. It is quite likely that such an absence as this man was guilty of was a serious detriment to the department; and while we cannot say that he was not justified to himself in sacrificing everything for his wife's health, yet even that affords no reason why the commissioner should overlook his abandonment of his public duty. So, although every word of the explanation may be true, it does not necessarily operate to excuse him of the charge which was made against him. For that reason, also, there was no error in refusing to hear testimony as to the truth of his excuses, and the determination of the commissioner must be sustained.

The writ should be dismissed and proceedings affirmed, without costs. All concur.