[Civ. No. 5529. Second Appellate District, Division One.—December 5, 1928.]

ALEXANDER KROHN, Respondent, v. BOARD OF WATER & POWER COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Appellants.

Jess E. Stephens, City Attorney, W. B. Mathews, Clarence S. Hill, Floyd M. Hinshaw, Francis H. Lindley and Geo. P. Adams for Appellants.

Rosecrans & Emme for Respondent.

HOUSER, Acting P. J.—The appeal herein is predicated upon the following facts: Plaintiff, who was a civil service employee of the city of Los Angeles, was discharged for alleged insubordination. Thereafter plaintiff duly filed a request with the board of civil service commissioners of said city "for an investigation of this case," in pursuance of which one of the members of the said board who had been delegated to perform such duty, after inquiry regarding the circumstances surrounding the discharge of plaintiff, filed with said commission his report to which were attached several affidavits purporting to deal with the situation. Thereupon the said board of civil service commissioners considered said report and adopted a motion, the effect of which was that the discharge of plaintiff was not sustained and that plaintiff should be restored to duty. The department of the city of Los Angeles in which plaintiff was employed having refused to conform to such finding and order by the Civil Service Commission, on application for writ of mandate, it was ordered and adjudged by the superior court that plaintiff be reinstated in his said position with the city of Los Angeles, pending which plaintiff be paid his regular wages until he be assigned to duty.

The points made by appellant for a reversal of the judgment relate to the jurisdiction of the board of civil service commissioners to make the finding of fact and the order of reinstatement of plaintiff to which reference has been had. Of such points, those which are deemed neces-

sary of consideration by this court are that the finding made by the board of civil service commissioners was not in writing; nor was the "investigation" had by said board such as is contemplated by the provisions of section 112 (a) (Stats. 1925, pp. 1024, 1067) of the charter of the city of Los Angeles governing the situation here presented.

So far as is here material, it will suffice to state that in general said section purports to provide for the procedure incidental to the "removal, discharge, or suspension" for "cause, which shall be stated in writing" of classified civil service employees of the city of Los Angeles, as well as for the investigation of the sufficiency of the "grounds" of such action as affecting any such employee; and in the event of lack of sufficient "grounds" for such "removal, discharge, or suspension," the reinstatement or restoration to duty of such employee. Omitting the portion of the charter provision which deals with the manner of removal of an employee, the section to which reference has been had, among others, contains the following provision: " . . . Upon such filing (statement of cause of removal) such removal, discharge, or suspension shall take effect. Within fifteen days after such statement shall have been filed, the said board, upon its own motion, may, or upon written application of the person so removed, discharged, or suspended, filed with said board within five days after service upon him of such statement, shall proceed to investigate the grounds of such removal, discharge, or suspension. If after such investigation said board finds, in writing, that the grounds stated for such removal, discharge, or suspension were insufficient or were not sustained, and also finds in writing that the person removed, discharged, or suspended is a fit and suitable person to fill the position from which he was removed, discharged, or suspended, said board shall order said person so removed, discharged, or suspended, to be reinstated or restored to duty. . . . "

Appellants contend that the board of civil service commissioners failed to comply with the provision of the charter which requires that the finding shall be "in writing." With reference thereto, by the return to the writ it appears that, as shown by the minutes of the board, the following action was taken:

"Commissioner Buzzell presented a detailed report of his investigation of the discharge of Alexander Krohn from the position of Auto Machinist, Water & Power Department, together with affidavits bearing on the conduct of F. M. Vandeventer, foreman, which Mr. Krohn stated had caused him to knock Mr. Vandeventer down. After the reading of Mr. Buzzell's report and the accompanying affidavits it was moved that, as the board considered the charges for which Mr. Krohn was discharged were not sustained and as the board considered him a fit and suitable person to fill the position from which he was removed, Alexander Krohn be restored to his position as auto machinist in the Water & Power Department. The motion was adopted by the following vote: Ayes: Commissioners Schreider, Stoneman, Workman, Buzzell and Fryman. Noes, None."

Specifically, it is urged by appellants that the insertion in the minutes of the board of the statement that the charges against the employee were not sustained was insufficient, but that such finding should appear by some other and separate instrument or document. It is clear that no one was injured by the course adopted by the board; to the contrary, all the rights of either the employee or of the employer were as fully and adequately protected thereby as might or could have been by virtue of any other procedure which has been suggested. No express form is required by the charter provision, and it is manifest that the substance has been preserved. Whatever may be said of the claimed lack of regularity in compliance with the possibly lawful requirement of what might be termed a "red tape" finding, with all its accompanying various and sundry legal technicalities, it is unquestionable that so far as either or any of the interested parties were concerned, the minutes of the board thoroughly and completely covered the situation.

Probably a more serious objection of appellants is that the "investigation" had by the board of civil service commissioners was such that no jurisdiction existed in it as a foundation for its assumed power in making the order of reinstatement of the employee. In this connection, several different interesting legal questions are submitted for consideration by this court—all of which, however, being primarily dependent upon the construction of the charter provision affecting the "investigation" by the board of the

grounds for the discharge of the employee. Reverting to the provision in question, it will be noted that its requirements are that either "upon its own motion," or by reason of the application of the discharged employee, the board "may . . ." or "shall proceed to *investigate* the grounds for such removal, . . ." It is claimed by appellants that the meaning or significance of the word "investigate" is identical with the word "hearing" or "trial"; and that as so construed the procedure adopted and pursued by the board in reaching its conclusion with reference to the sufficiency of the "grounds" for the removal of the employee was wholly irregular and of no validity so far as conferring jurisdiction in the board was concerned. The history of the section of the charter of the city of Los Angeles would point to a different conclusion. Ordinarily a trial of the nature of that here in question is a result following the filing of charges or an accusation of some sort at which the accused may have the right to be heard in his own defense. Also, the trial tribunal may administer oaths, issue subpoenas for witnesses and enforce the production at the trial of books, papers, documents, etc., pertinent to the inquiry. The charter of 1889 (Stats. 1889, p. 455) contains no provision relating to the point at issue. It is not until 1903 (Stats. 1903, p. 555) that any legislation may be found affecting the remedy for alleged wrongful discharge of civil service employees of the city of Los Angeles. Section 242 of the latter act or concurrent resolution (Stats. 1903, p. 579) provides that:

"No officer or employee in the classified civil service of this city other than one belonging to the police force or fire force, who shall have been appointed under said rules, and after said examination, shall be removed or discharged except for cause upon written charges, and after an opportunity to be heard in his own defense. Such charges shall be publicly investigated by the civil service commission. The finding and decision of such commission shall be final and shall be certified to the appointing officer, and shall be forthwith enforced by such officer. Nothing in this article shall limit the power of any officer to suspend a subordinate for a reasonable period, not exceeding thirty days. In the course of an investigation of charges each member of the commission shall have power to administer oaths, and shall

have the power to secure by its subpoena both the attendance and testimony of witnesses and the production of books and papers relevant to such investigation for any cause. Nothing in this section shall be construed to require such charges or investigation in case of unskilled laborers.''

Said section 242 to which reference has just been had, was amended at the next session of the legislature (Stats. 1905, pp. 980, 992) by eliminating therefrom the following provision: ''In the course of an investigation of charges each member of the commission shall have power to administer oaths, and shall have the power to secure by its subpoena both the attendance and testimony of witnesses and the production of books and papers relevant to such investigation for any cause.''

Although the charter was variously amended in the years 1907 and 1909, the section thereof relating to public hearing on written charges against an employee remained intact until the year 1911, when it was amended by section 241, Statutes of 1911, pages 2051, 2116. That amendment was carried practically verbatim into the present charter of the city of Los Angeles (sec. 112 (a), Stats. 1925, pp. 1024, 1067), and, as hereinbefore set forth, instead of providing for a discharge of an employee only for ''cause upon written charges, and after an opportunity to be heard in his own defense,'' and that such charges be publicly ''investigated''—the provision was inserted that either upon written application therefor by the discharged employee, or upon the board's own motion, the board should ''proceed to *investigate* the grounds for such removal. . . . '' Further consideration of the charter of 1903 (Stats. 1903, pp. 555, 579) discloses further procedural provisions ordinarily incident to a public hearing or trial, in that in connection therewith each member of the civil service commission is given the power to administer oaths and to secure by subpoena ''both the attendance and testimony of witnesses and the production of books and papers relevant to such investigation. . . . '' As compared with the charter provision of 1903, it may be noted that nowhere in the present charter provision relating to the ''investigation'' of the grounds of discharge of an employee is any language employed either identical with, or even similar to, the words or phrases ''written charges,'' ''opportunity to be heard in his own

defense," "publicly investigated," "administer oaths," "subpoena," "attendance of witnesses," or "production of books and papers"—which characterize the procedure and powers indicated in the charter of 1903. Attention is also directed to the language of the present charter provision to the effect that within fifteen days following the filing of the statement containing the "cause" of the discharge of the employee, the board of civil service commissioners "upon its own motion may . . . proceed to investigate the grounds of such removal. . . . " Assuming that a proposed "investigation" necessarily should take the form of a trial in its ordinary sense, it would seem at least unusual, if not irregular or incongruous, that the court itself should initiate the proceedings. It is therefore evident that the difference between the procedure and powers skeletonized by the provisions of the 1903 charter, and that of the present charter, is radical and significant. It points, if not conclusively, at least distinctly, to an intention on the part of the framers of the charter, and of the legislature in its resolution, to an abandonment of anything resembling a judicial hearing on the application by the discharged employee for an "investigation" of the grounds of his removal from his position.

In the state of New York it has been held that a provision of a statute in effect that a civil service employee shall not be removed "until he has been informed of the cause of his removal and has been allowed an opportunity for explanation," is clearly distinguishable in its procedural requirements from a provision which provides for removal of such an employee "for cause after opportunity to be heard." (*People* v. *Thompson*, 94 N. Y. 451; *People* v. *La Grange*, 2 App. Div. 444 [37 N. Y. Supp. 991]; *People* v. *Cruger*, 17 App. Div. 483 [45 N. Y. Supp. 519]; *People ex rel. Lawson* v. *Coler*, 40 App. Div. 65 [57 N. Y. Supp. 636].) In the case last cited it was held that the language of the statute to the effect that the employee might be discharged only after he had been informed of the cause of his proposed removal and had been "allowed an opportunity for explanation" did not contemplate a public hearing or trial of the matter. In connection therewith, in part the court said: " . . . The charges were not verified under oath, no witnesses were sworn, and the hearing was had

before the deputy comptroller, instead of before the comptroller himself. These objections would be substantial if the opportunity to make an explanation, provided for by the act of 1898, was in any sense a trial, . . . The act of 1898 contemplates no such formal procedure. It requires nothing more than that the reasons inducing the contemplated removal shall be communicated to the person proposed to be dismissed, and that he shall be fairly heard, if he desires to be heard, in his own behalf, to explain any alleged misconduct, neglect, or incapacity on his part. . . . It seems to afford adequate protection if made to a principal deputy, who communicates it to the superior officer, by whom the removal must actually be made. . . . ''

The case of *Price* v. *City of Seattle*, 39 Wash. 376 [81 Pac. 847], is also in point in that it deals with, and lays down the principle of, the conclusive right of a city to adopt such procedure as it may see fit with reference to the discharge of its employees.

It is therefore concluded that in the use of the word ''investigate,'' as contained within the charter provision of the present charter of the city of Los Angeles, the legislative intention was to narrow its significance to something less than a public hearing or trial, as those words are generally understood; and that the position of the Civil Service Commission in its relation to the several departments of administration of the city of Los Angeles wherein assistants were employed in the classified civil service of said city, was analogous to that of a superior or chief executive officer of a corporation toward its departmental manager or foreman, so far only as ''investigating or examining into the cause of discharge of an employee was concerned.'' Assuming the correctness of such determination, the right and power of the board of civil service commissioners to adopt and to pursue such reasonable course as it saw fit with reference to its ''investigation'' is unquestioned. The jurisdiction being thus established, the findings and order of the board of civil service commissioners in the premises are conclusive.

It follows that the judgment should be affirmed. It is so ordered.

York, J., and Crail, J., *pro tem.,* concurred.