In the Matter of DAVID M. DUNNING, JR., Petitioner, against ALFRED E. TURNER, as City Manager of the City of Auburn, Respondent.

Fourth Department, May 11, 1955.

*George B. Shamon* for petitioner.

*Anthony J. Contiguglia, Corporation Counsel,* for respondent.

*Per Curiam.* This is a proceeding under article 78 of the Civil Practice Act to review the determination of the city manager of the City of Auburn dismissing the petitioner from his position as city engineer of the City of Auburn.

The petitioner is an honorably discharged veteran who had held the position of city engineer since January 1, 1944. The respondent city manager is also a civil engineer who had served as assistant city engineer for a period of twenty-eight years during part of which service the petitioner was his superior officer. The respondent took office as city manager on January 1, 1952; on September 17, 1952, he summoned the petitioner to his office, inquired if petitioner would like to resign and upon receiving a negative answer handed the petitioner a previously prepared letter reading in part as follows: " Due to recent developments and statements attributed to you, which in my opinion are detrimental to the best interests of the City of Auburn, and which I consider acts of insubordination and inefficiency, I feel compelled to suspend you from your duties

as City Engineer of the City of Auburn.'' Formal charges were afterward served and a hearing was had.

The petitioner may be removed only for incompetency or misconduct. Our inquiry here is whether the charges are substantial and if so whether there is any substantial evidence to support them. Charges Nos. 2, 6 and 7 relate to the matters connected with the sewer treatment plant which apparently precipitated the discharge and will be considered first.

Charge No. 2 accuses the petitioner of failure to make recommendations in the budget for the sewer treatment plant and that he improperly criticized the respondent for cutting the budget pertaining thereto. The petitioner in his budget requests submitted an item of $3,500 for extra help for the sewage treatment plant. Neither the petitioner nor the respondent sought an oral conference with the other with respect to the budget items for the sewage treatment plant and no such conference was had. The respondent reduced the budget for the sewage treatment plant to a figure $9,700 less than that submitted by the petitioner. The reduction included the item of $3,500 for extra help. When the petitioner learned of this reduction on June 12th he wrote a letter to the respondent in which he complained about the reduction and pointed out that some $7,500 was needed for repairs and improvements and that additional moneys were needed for extra help; also, that a lack of help or a breakdown might cause a shutdown of the plant and a menace to the health of the community.

The essence of charge No. 2 is that in the petitioner's budget request the needed repairs and improvements were not itemized and that the letter of June 12th was in effect a personal criticism of the respondent for cutting the budget for the sewage treatment plant. It would seem that had the failure to itemize the needed repairs and improvements been regarded at the time as a serious defect in the budget request, it would not have been overlooked. Respondent made no request for a breakdown, nor did he at the time criticize the form or content of the proposed budget or indicate that he was unfamiliar with the needs. So far as the element of criticism in petitioner's letter of June 12th is concerned, the letter was not made public and was a personal communication to the respondent.

We think under the circumstances that charge No. 2 is not a substantial charge, nor is it sustained by the evidence.

It appears that for some years prior to the transactions in question there had been complaints from State and local health authorities and from the Town of Throop that the City of

Auburn was polluting the waters of the Owasco Lake Outlet by discharging raw sewage into that stream. It would appear from the testimony that the Auburn City sewage was for the most part taken care of at the city sewage treatment plant but that upon occasions when the flow of sewage was abnormal in volume or when the plant was not operating at full capacity it was the practice to by-pass some of the sewage into the outlet. It appears that at the time in question here the Town of Throop was complaining that such sewage had been by-passed early in the month of July and was threatening suit against the city.

The substance of charge No. 6 is that on July 1, 1952, sewage was by-passed with the permission or acquiescence of petitioner but without authorization and without consulting the city manager; that the petitioner failed to visit the plant and investigate conditions or offer suggestions and practical solutions to remedy the situation. The evidence is to the effect that the problem was a recurring one, well known and well understood by the city officials and that various conferences had taken place over a period of time looking forward to its solution. There is no evidence in the record of any rule or regulation or order promulgated by the city manager that permission be obtained from the city manager before by-passing sewage into the Owasco Outlet. It had long been the practice to so by-pass the sewage in emergency situations. The respondent admitted in his testimony that there was no order forbidding by-passing.

We find no substantial evidence that the petitioner failed to investigate and recommend solution of the problem. We think that charge No. 6 is not sustained.

The substance of charge No. 7 is that petitioner in an interview with a newspaper reporter made statements in connection with the pollution of Owasco Outlet which were not in the best interests of the City of Auburn and constituted insubordination. The newspaper published the interview and quoted the petitioner as stating that he had warned city officials about the pollution problem but had not been given sufficient funds to correct the situation; that the budget for the sewage plant had been cut and that the extra help necessary for the efficient operation of the plant could not therefore be provided. The city manager takes issue with him and claims that sufficient help could have been provided by transfer of help from other departments. The city manager regarded the newspaper article as tending to blame him for lack of adequate help due to his cutting of the budget

and he therefore regarded petitioner's statements to the newspaper reporter as an act of insubordination.

There is no evidence of any rule or order forbidding department heads from talking with representatives of the press regarding public problems and there is no evidence that the petitioner falsified the factual situation in his talk with the news reporter.

We conclude that charge No. 7 is not sustained.

The substance of charge No. 1 is that petitioner failed to comply with the request of the city manager to file budget requests by April 10, 1952. The city manager requested department heads to submit budget requests for their respective departments by April 10, 1952. The petitioner submitted his proposed budget according to his testimony sometime after April 10th and before May 1st, and according to the testimony of the respondent he received it sometime during the first two weeks in May. It is undisputed that petitioner was confined to his home by illness from April 8th to April 25th. He testified that immediately upon his return to work he proceeded to complete his proposed budget. There is no evidence of any substantial inconvenience resulting to the city manager, and we conclude that this charge is not substantial.

Charges Nos. 3, 4 and 5 relate generally to technical engineering problems involving the construction of a sewer on Cross Street and a sewer and grading on the so-called Arlington Project and the construction of a pavement on Thornton Avenue. The evidence as to these charges resolves itself into a conflict of opinions as to engineering problems and procedures and to some delay due to an evident lack of sufficient professional help capable of making maps at the time in the engineer's office. We find no evidence of incompetence, misconduct or insubordination as to any of the matters referred to in these charges.

Since some of the charges are not substantial charges and others lack substantial evidence to support them, we reach the conclusion that neither incompetency nor misconduct on the part of the petitioner has been established and the determination of the city manager should be annulled, with $50 costs, and that the petitioner should be reinstated to his position.

All concur. Present — McCurn, P. J., Vaughan, Kimball, Piper and Van Duser, JJ.

Determination of the city manager of the City of Auburn, N. Y., annulled, with $50 costs and disbursements and petitioner reinstated.