In the Matter of STANLEY PILAWA, Petitioner, v CITY OF UTICA, Respondent.

Fourth Department, July 10, 1980

### APPEARANCES OF COUNSEL

*Buckley & Scholl (John C. Scholl* of counsel), for petitioner.

*Lawrence George, Corporation Counsel (J. K. Hage, III,* of counsel), for respondent.

### OPINION OF THE COURT

WITMER, J.

In this CPLR article 78 proceeding petitioner seeks annulment of the determination by respondent City of Utica (the City) dismissing him as of June 25, 1974 from his position as stationary engineer in the City's auditorium without filing and serving charges against him and affording him a hearing. Petitioner asks for restoration to his position of employment and payment of his salary from the effective date of his dismissal. We conclude that his petition should be granted in part and that further proceedings should be had as herein specified.

Beginning in 1960 petitioner was employed by the City as a stationary engineer. On June 17, 1974 the City dismissed him

effective June 25, 1974. He instituted a proceeding under section 75 of the Civil Service Law for restoration to his position and for back pay until the City should file charges against him and afford him a hearing thereon. In the fall of 1974 a memorandum was written and an order was entered in that proceeding determining that petitioner had been a permanent employee of the City since August, 1961 and could not be discharged for cause without charges being made against him and an opportunity granted to him to be heard thereon. The court deferred until after such contemplated charges and hearing a decision as to petitioner's rights to restoration to his position and to back pay. The City did not appeal from the order, and so it became the law of the case with respect to petitioner's employment status.

The City filed and served 11 charges against petitioner on March 1, 1975 and a hearing thereon began on March 10, 1975. It continued intermittently for nine days through April 30, 1975 when it was suspended for over a year, during which time the City's counsel in the case and the hearing officer were changed, and the hearing was resumed for 16 additional days on May 10, 1976 through June 29, 1976. Upon reviewing the testimony taken in these two periods, consisting of more than 2,000 pages, and the many exhibits, in November, 1976 the hearing officer rendered his decision sustaining the charges against petitioner. On January 6, 1977 the City adopted the decision in all respects.

Four months later petitioner instituted this proceeding for review and annulment of the determination sustaining his dismissal, and for restoration to his former position and for back pay; the City answered, and the proceeding was transferred to this court by order of August 10, 1977. For failure of prosecution of the proceeding we dismissed it, *sua sponte,* on February 4, 1980; but on March 28, 1980, on petitioner's application, we vacated that dismissal on condition that the case be heard at the May term, 1980, which it was.

Shortly after petitioner's dismissal in June, 1974, the City entered into contracts with outside companies for them to install new equipment in the auditorium and to perform most of the services formerly performed there by the three stationary engineers (of whom petitioner was one); it abolished the three positions of stationary engineer; and one of petitioner's former associate stationary engineers, Mr. Jalowiec, was re-employed at his former salary under the title of auditorium

maintenanceman. The record establishes that the City had valid economic reasons for abolishing the three positions of stationary engineer; that it acted in good faith in doing so; and that petitioner has no valid grievance by reason thereof (see *Matter of Saur v Director of Creedmoor Psychiatric Center,* 41 NY2d 1023; *Matter of Wipfler v Klebes,* 284 NY 248, 254; *Switzer v Sanitary Dist. No. 7, Town of Hempstead,* 73 AD2d 617, 59 AD2d 889; *Matter of Schmidt v Board of Supervisors of County of Monroe,* 244 App Div 493). Thus, petitioner's request to be restored to his former position must be denied. Because it was established by the order of November 13, 1974 that petitioner was improperly dismissed as of June 25, 1974, it remains for decision whether the hearing record establishes that the later confirmation on January 6, 1977 of such dismissal was supported by substantial evidence; whether the penalty of dismissal was excessive, and, if so, to what relief petitioner is entitled with respect to re-employment by the City and in any event to what back pay petitioner is entitled.

Although the hearing officer sustained all of the 11 charges against petitioner, he made no specific finding with respect to five of them, to wit, charges numbered 3, 4, 5, 9 and 11; he merely stated that they were sustained by the general tenor of the testimony. Those charges against petitioner were of a general deprecatory nature, mostly petty, and for lack of proof and findings they must be disregarded. We shall briefly review the other six charges.

Charge number one was that petitioner "constantly * * * refused" to work. This of course is a serious charge, but no solid evidence was introduced to support it. Neither the Mayor nor the City's auditorium manager who dismissed petitioner appeared to testify against him and only one employee who worked with petitioner was called to testify against him. The other witnesses worked in other areas and were generally not in a position to know the facts firsthand. Although these witnesses testified that petitioner was often idle and that he refused to help others, such as the laborers, no one testified that petitioner failed to perform the tasks required of a stationary engineer. Only one instance of refusal to work was shown, and in that instance there existed a legitimate dispute by petitioner as to whether it was his duty to perform that task, i.e., to clean the boiler and engineering room. At any rate, evidence of one refusal could not establish what ap-

peared to be an excessive charge of "constantly" refusing to work. No evidence was introduced to establish that petitioner ever failed or refused to do work required in his job title.

Charge number two was that petitioner was critical of laborers in the auditorium, indicating to them that they were slow in performing their work, thus irritating them. The background of this charge is that because of the close scheduling of different types of events in the auditorium, it was often necessary to change the floor from an ice rink to a wood floor and vice versa. It appears that petitioner's criticisms arose from the pressure on him and his fellow employees to accomplish such changes to accommodate the scheduled events. The evidence establishes the charge against petitioner and that his conduct angered the laborers at whom it was directed.

Charge number six was that petitioner remained "motionless" while on duty. This is another incidence of overcharging. The evidence shows that petitioner's principal duties were to check gauges every hour and make needed repairs. The work did not consume the whole hour; and so after doing his work every hour he had some time for reading or talking with others. There was no proof that such action on his part constituted "misconduct". At best this evidence only tends to show that the City acted in good faith in deciding to abolish the position of stationary engineer upon finding a more economical way of having the service performed.

Charge number seven was that petitioner uttered a racial slur to another (black) employee. The evidence supports the charge. In mitigation, however, there was evidence that it was done in jest; and ethnic references were part of the bantering that took place amongst the employees, including the object of the alleged slur.

Charge number eight was that petitioner conspired to blackmail the manager. In light of the uncontradicted evidence of the conduct of the manager, at which petitioner's alleged action was directed, and the testimony that the person with whom the petitioner is alleged to have conspired took "as a joke" his comment that he would give $50 for a picture of the manager in an embarrassing position with one of the other female employees, it is patent that this charge is without substance.

Charge number 10 was that petitioner wrote a scurrilous letter to his manager. Admittedly, petitioner wrote the letter; and the questions presented under this charge are (1) were

petitioner's statements in the letter untrue and (2) did the letter amount to insubordination. At the hearing petitioner presented evidence to prove the truth of the statements that he made to the manager; and no evidence was introduced on behalf of the manager to refute them. Thus, the record does not support the charge that in the letter petitioner made wrongful accusations against the manager. Moreover, such action as a matter of law does not constitute "insubordination", which implies intentional and willful disobedience in the performance of duty (see *Matter of Griffin v Thompson,* 202 NY 104, 113; *Matter of Dunning v Turner,* 285 App Div 742, 745-746, affd 309 NY 933; cf. *Matter of Short v Nassau County Civ. Serv. Comm.,* 45 NY2d 721; *Matter of Di Vito v State of New York, Dept. of Labor,* 64 AD2d 867, affd 48 NY2d 761).

In summary, of the six charges, only charges numbered two and seven have support in the record. Although petitioner's conduct with respect thereto might justify admonition, reprimand or some other penalty, certainly dismissal was grossly excessive *(Rob Tess Rest. Corp. v New York State Liq. Auth.,* 49 NY2d 874; *Matter of Mitthauer v Patterson,* 8 NY2d 37; *Matter of Boddie v County of Westchester,* 41 AD2d 546, affd 33 NY2d 835; *Matter of Marcato v Board of Educ.,* 40 AD2d 978; *Matter of Lo Bello v McLaughlin,* 39 AD2d 404, 408, affd 33 NY2d 755; *Matter of Carville v Board of Educ.,* 11 AD2d 903, mod on other grounds 11 AD2d 1092; cf. *Matter of Ansbro v McGuire,* 49 NY2d 872; *Matter of Purdy v Kreisberg,* 47 NY2d 354, 360; *Matter of Di Vito v State of New York, Dept. of Labor, supra).* The City's action in dismissing petitioner, therefore, should be annulled, and this matter should be remitted to respondent City to reconsider the penalty, if any, which it may properly administer to petitioner by reason of sustained charges numbered two and seven *(Rob Tess Rest. Corp. v New York State Liq. Auth., supra).*

Because petitioner was improperly dismissed but his position as stationary engineer was properly abolished, the question arises as to what employment rights with the City petitioner has. Sections 80 and 81 of the Civil Service Law control. The one position that the City created to take the place of three stationary engineers is held by Mr. Jalowiec, who was one of the original three stationary employees appointed when petitioner was appointed in 1961. As a veteran he has seniority over petitioner (Civil Service Law, § 85, subd

7), and so petitioner has no right to his job. It appears, therefore, that petitioner's remaining right is to have his name placed upon a preferred list (see *Matter of O'Connell v Kern,* 287 NY 297, 299), to be certified for filling vacancies prior to any other list, including a promotion eligible list (Civil Service Law, § 81, subd 1; see *Matter of Banko v Bahou,* 69 AD2d 933; *Matter of Kerr v Weisenberg,* 65 AD2d 815; *Matter of La Fontaine v New York State Dept. of Civ. Serv.,* 56 AD2d 974).

The record does not reveal whether, had petitioner's name been on such a list, he could have obtained alternate employment with the City after June 25, 1974. This matter should, therefore, be remitted to respondent to permit petitioner, if he be so advised, to establish his right to alternate employment in accordance with the statute.

It remains to consider petitioner's right to back pay. Because of his delay in prosecuting this proceeding after the City's determination against him on January 6, 1977, as above recited, we conclude that in no event should he receive back pay after December 31, 1977. He is deemed to have waived it beyond that date (see *Gerber v New York City Housing Auth.,* 42 NY2d 162, 165-166). On remission of this proceeding to respondent, it should make a determination upon a sufficient record concerning the credits to which the City is entitled upon its obligation if any, to petitioner for back pay. Whether the City is so obligated will depend upon whether petitioner can establish under sections 80 and 81 of the Civil Service Law, as above discussed, that during the period from June 25, 1974 to December 31, 1977 he was entitled to alternate employment with the City. The credits, if any, shall be for any proper period that petitioner may be suspended without pay for his misconduct as above stated, and for earnings which petitioner may have received during such period (see *Gerber v New York City Housing Auth., supra; Matter of Lezette v Board of Educ.,* 35 NY2d 272, 283; *Kearse v Fisher,* 67 AD2d 963; *Matter of Fusco v Griffin,* 67 AD2d 827).

The City's determination should, therefore, be annulled and the matter remitted to the City for proceedings in accordance with this opinion.

SIMONS, J. P., HANCOCK, JR., SCHNEPP and DOERR, JJ., concur.

Petition unanimously granted, with costs, to the extent that

determination on all charges except Nos. 2 and 7, be annulled and matter remitted to respondent for further proceedings, in accordance with opinion by WITMER, J.