OPINION OF THE COURT
Alice Schlesinger, J.
*619 This CPLR article 78 proceeding commenced by Matthew Silberzweig, a former employee of the Department of Sanitation, against the Sanitation Commissioner presents an interesting question: Was it arbitrary and capricious and/or an abuse of discretion for the Commissioner to deny Silberzweig’s application for reinstatement to employment, when Silberzweig was discharged based on his absence from work without leave (AWOL) due to an arrest, and he was subsequently acquitted of all charges related to the arrest?
Background Facts
On or about May 21, 2001, petitioner Matthew Silberzweig was appointed from a competitive civil service list to the title of sanitation worker. But for a six-month period in the latter half of 2003 when he was temporarily laid off due to a reduction in force, Silberzweig was continuously employed by the Department of Sanitation until his employment was terminated on December 31, 2007.
Silberzweig’s work record was far from pristine. Over the course of six years, he was charged with various acts of misconduct and repeatedly disciplined. The conduct which had led to the prior disciplinary action ranged from relatively minor infractions, such as failing to safeguard the Department’s telephone order book, to a more serious charge based on Silberzweig’s conviction for forgery in the third degree based on his unauthorized use of Department stationery to create a forged letter to participate in a sheriffs car auction. The disciplinary penalties imposed for these various prior infractions ranged from a written reprimand to two suspensions for a period of weeks without pay. However, at no point over the six-year period did the Commissioner find Silberzweig’s conduct worthy of discharge until the incident at issue herein.
The incident which led to Silberzweig’s discharge relates to his arrest on August 1, 2007 on a charge of conspiracy to commit murder for hire in the United States District Court, Eastern District of New York. Upon arraignment, Silberzweig was held without bail and remanded to the Metropolitan Detention Center in Brooklyn pending trial. From February 4 through 13, 2008, Silberzweig was on trial before the Honorable Sandra Townes in the Eastern District. On February 13, 2008, Silberzweig was acquitted of all the charges and released. (See exhibit B to petition.)
Shortly after the August 1 arrest, on August 8, 2007, Sanitation issued a complaint against Silberzweig for being AWOL for *620 five days from August 2 through 8, 2007. On October 29, 2007 the complaint was amended to state: “Since on or about August 2, 2007, until present, the respondent Matthew Silberzweig has been continuously absent without authorization and has failed to contact the Department to resign or resolve his AWOL status.” (Answer, exhibit 16.1[1]
According to the Department, Silberzweig was given a full and fair opportunity to be heard before his employment was terminated while he was in prison. By letter dated September 24, 2007 mailed to Silberzweig’s home address, Sanitation advised Silberzweig that he had been charged with a violation of rule 1:4: “Employees may not be absent without authorization.” (Answer, exhibit 17.) The letter further stated that a hearing was scheduled for October 31, 2007 and that it might proceed without Silberzweig should he fail to appear.
By letter dated September 27 mailed to the prison, Sanitation sent Silberzweig resignation forms and a self-addressed envelope. The letter further advised Silberzweig that, should he choose not to resign, a hearing would proceed on the AWOL charge on October 31. (Answer, exhibit 18.)
Silberzweig chose not to resign and, because he was being held without bail, he could not and did not appear at the hearing on October 31. The hearing was adjourned to November 30 to give the Department an opportunity to serve an amended complaint extending the charged AWOL period, and Silberzweig was notified by letter sent to his home. (Answer, exhibit 20.) As he was still in prison, Silberzweig did not appear on November 30, and the hearing proceeded before Administrative Law Judge (ALJ) Salzman without any appearance on Silberzweig’s behalf.
At the November 30 hearing, the Department introduced evidence of Silberzweig’s absence from work without permission. ALJ Salzman placed her decision on the record at the conclusion of the hearing. (Answer, exhibit 21.) The ALJ found that the Department had proven the misconduct charged: “He [Silberzweig] has been continuously absent without authorized leave since August 2, 2007” (transcript at 13, lines 24-26). Citing cases for the proposition that “an employee’s incarceration *621 is actionable as an absence without leave” (transcript at 13, lines 27-33), the AU found Silberzweig liable for the misconduct charged and recommended the penalty of termination of employment (transcript at 13, lines 4-6, 15-17). On December 31, 2007, Commissioner Doherty approved the recommendation and terminated Silberzweig’s employment. (Answer, exhibits 23, 24.)
As soon as Silberzweig was acquitted of the criminal charges and released from prison, his counsel wrote to the Commissioner by letter dated February 27, 2008 advising the Department of the acquittal and requesting Silberzweig’s reinstatement. (Answer, exhibit 25.) The Commissioner, through counsel, responded by letter dated March 7, 2008, simply stating that the request had been denied. (Answer, exhibit 27.) This article 78 proceeding ensued. While Silberzweig does not challenge the decision terminating his employment, he vigorously challenges the decision denying his request for reinstatement.
Discussion
The parties agree that petitioner Silberzweig’s position as a sanitation worker was protected by section 75 of the Civil Service Law and section 16-106 of the Administrative Code of the City of New York. Those sections bar any disciplinary action unless two conditions are met: (1) the discipline is based on misconduct; and (2) timely notice is given of the charges and the statutory procedures are followed. Specifically, Civil Service Law § 75 (1) provides in relevant part that an employee entitled to its protections “shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section.” Subdivision (4) further requires that no “disciplinary proceeding shall be commenced more than eighteen months after the occurrence of the alleged incompetency or misconduct complained of and described in the charges.” Administrative Code § 16-106 (6) similarly limits the Commissioner’s power to punish an employee to instances where the employee “has been guilty of’ one of nine specified categories of misconduct, including “absence without leave.”
Silberzweig asserts that the Department’s refusal to reinstate him violates these provisions of law because the decision imposes a penalty even though no basis exists for a finding of misconduct. Both sides agree that an employee’s absence from work due to an incarceration justifies a penalty for being AWOL. However, Silberzweig insists that where, as here, the worker is acquitted of all criminal charges, his absence from work was in *622 voluntary and beyond his control and does not constitute misconduct. (See petition 1Í1Í 24-26.) Therefore, the refusal to reinstate Silberzweig after his acquittal was tantamount to a discharge unsupported by misconduct, he asserts. What is more, citing to three decisions, Silberzweig argues that the Department has a policy of reinstating employees who have been discharged as AWOL, when the absence was due to the employee’s incarceration and the employee was ultimately acquitted of all the charges.[2]
The Department vigorously denies that any such policy exists. Rather, it asserts that the “decision to reinstate a former DSNY employee is made on a case by case basis and is at the sole discretion of the Commissioner of DSNY.” (See answer 1f 69.) In support of this assertion, the Department provides an affidavit from John J. Doherty, the Commissioner of the Department of Sanitation, disputing petitioner’s claim that a policy exists and explaining the case-by-case approach to reinstatement applications. Specifically, Doherty states (1HÍ 7-8) that
“Upon receipt of a request for reinstatement from a former DSNY employee, no matter how the employee had left his or her employment with DSNY, DSNY will review the employee’s personnel file to determine whether reinstatement should be approved. Specifically, I and others review the employee’s disciplinary history, performance evaluations and sick leave reports. For instance, if an employee has an outstanding complaint for which he or she had been served, but not subject to discipline prior to termination, or if the employee had a poor performance record or disciplinary history, then that employee may not be reinstated.”
Turning to Silberzweig’s application, Doherty states (1f 11): “In reviewing petitioner’s request for reinstatement, I found that petitioner had an extensive disciplinary history. Further, petitioner had a record of poor work performance evaluations, and had even been disciplined for violations of DSNY’s sick leave policy. As such, I determined that petitioner’s request for reinstatement should be denied.” Supporting this assertion, the Department provides the details of Silberzweig’s disciplinary history, as well as performance evaluations for the five years *623 from 2002 through 2007 which include unsatisfactory ratings for various categories. Regarding the cases cited by Silberzweig as evidence of a policy to reinstate acquitted employees, Doherty distinguishes them based on the subject employee’s satisfactory performance evaluations coupled with no or a negligible disciplinary history. (See H1114-17.) Based on all of the above, the Department argues that its decision to deny Silberzweig’s application for reinstatement is entitled to judicial approval because the court may not substitute its judgment for that of the agency where, as here, the Department’s decision is rationally based on the facts. (See mem at 7-11.)[3]
This court need not determine whether or not the Department has a policy to reinstate acquitted employees, as the decision to deny Silberzweig reinstatement is unlawful because it contravenes the statutory prohibition in Civil Service Law § 75 and Administrative Code § 16-106 against disciplining a covered employee absent misconduct. If the Department is dissatisfied with Silberzweig’s performance, it may seek his discharge in accordance with proper procedures. However, the Commissioner may not circumvent those procedures by denying the employee’s reinstatement application in the “exercise of his discretion.” The Commissioner does not have the discretion to violate the statute.
As the courts have made clear, an agency cannot develop a rule or policy or take action against an employee which is disciplinary in nature unless the action is taken in accordance with governing laws. A prime example is Matter of Johnson v Director, Downstate Med. Ctr., State Univ. of N.Y. (41 NY2d 1061 [1977]). The petitioner in Johnson was a permanent civil service employee at Downstate Medical Center who had been working as a laboratory animal caretaker since 1963. By letter dated December 26, 1974, Johnson was advised that, because he had neither reported for work since December 11, nor offered an explanation for his absence, his absence without leave was being accepted as a “resignation” effective December 10. As indicated in the letter, Downstate was relying for its determination on Rules of the Department of Civil Service (4 NYCRR) § 5.3 *624 (former [d]) which provided in relevant part that “[w]hen an employee is absent without leave and without an explanation therefor for a period of 10 work days, such absence shall be deemed to constitute a resignation effective on the date of the commencement of such absence.” While there was some factual dispute as to whether Johnson had, in fact, been absent for the entire period without explanation or permission, the central issue before the court was whether Downstate could apply the rule and secure Johnson’s “resignation” without following the dictates of Civil Service Law § 75.
The Court of Appeals held that Downstate’s reliance on the “resignation” rule was improper as the effect of the rule was tantamount to a termination of Johnson’s employment without compliance with Civil Service Law § 75. Specifically, the court stated (at 1062) as follows:
“Whatever may be its external formulation, in substance this rule provides that a certain type of venial dereliction of duty, if unexplained, will authorize an employer to terminate the employment of a temporary or permanent employee. In a general sense it appears to offer a means for summary, involuntary termination of employment based on nonperformance of duty. To the extent that its application may result in a discharge of the employee it may be said to parallel section 75 in purpose. But, as occurred in this instance, the employer is not required or expected to give any notice to the employee before invoking the rule. This flies in the face of one of the mandates of section 75.”
As discussed by the Appellate Division, First Department, later that year in Matter of Bernstein v Industrial Commr. of State of N.Y. (59 AD2d 678 [1977]), the Johnson decision had far-reaching ramifications in the civil service field in enforcing the protections afforded employees by Civil Service Law § 75. In Bernstein, as in Johnson, the employer applied section 5.3 (former [d]) to deem the employee’s absence without leave an automatic “resignation.” The employee sought reinstatement, and her request was denied. Her article 78 petition was originally dismissed as time-barred, but the Appellate Division reversed and reinstated the petition and awarded petitioner back pay effective the date of her “resignation” based on Johnson. In so doing, the court confirmed the profound effect that the Johnson decision had in enforcing compliance with Civil Service Law § 75, stating (at 679) that
*625 “It appears that the State of New York has adopted a policy of reinstating all tenured civil service employees terminated pursuant to 4 NYCRR 5.3 (d) [the resignation rule] and that the office of the Attorney-General does not oppose reinstatement of petitioner-appellant in view of the decision in Matter of Johnson v Director, Downstate Med. Center (41 NY2d 1061, supra).”
The decision in the instant case to deny Silberzweig’s application for reinstatement to his position as sanitation worker similarly “flies in the face of one of the mandates of section 75” and the dictates of Johnson and Bernstein. As in Johnson (at 1062), “To the extent that the [decision denying reinstatement] resulted] in a discharge of the employee it may be said to parallel section 75 in purpose.” Therefore, the employee is entitled to the procedural protections in section 75 of the Civil Service Law.
The denial of reinstatement also violates the above-discussed requirement of Civil Service Law § 75 that no disciplinary action be taken absent misconduct. As the statutory grounds for disciplinary action reveal, misconduct on the part of a civil service employee “implies intentional and willful disobedience.” (Matter of Reisig v Kirby, 62 Misc 2d 632, 635 [Sup Ct, Suffolk County 1968], affd 31 AD2d 1008 [2d Dept 1969], citing Matter of Griffin v Thompson, 202 NY 104 [1911].) Civil Service Law § 75 (2) further confirms that “[t]he burden of proving incompetency or misconduct shall be upon the person alleging the same,” in this case, the respondent. Thus, in Reisig, the court annulled the decision discharging a civil service employee for insubordination based on her refusal to respond to an order directing her return to work, when she documented that she was physically unable to return to work. Finding that the evidence failed to establish that the employee had intentionally or willfully disobeyed her employer, the court held that the facts fell “far short of stating a case of insubordination and consequent misconduct such as would justify [the employee’s] discharge.” (62 Misc 2d at 635.)
Similarly, in Matter of Cosgrove v Carey (253 App Div 613 [1st Dept 1938], revd on other grounds 278 NY 350 [1938]), the First Department annulled a decision dismissing a firefighter because he was unable to perform the duties of his position due to physical degenerative changes. Finding that the facts did not constitute “censurable incapacity,” the court stated (253 App Div at *626 614): “The incapacity of old age is not an ‘offense’ to be ‘punished’ by dismissal from the service or the imposition of a ‘penalty,’ and we cannot believe that the framers of the charter intended such a result.”
Such is the case here. While Silberzweig’s absence without leave due to his arrest may have justified the termination of his employment, no misconduct existed which justified the denial of reinstatement once Silberzweig had been acquitted of the charges which had led to his arrest. The Third Department has ruled to this effect in the context of unemployment, insurance benefits. For example, in Matter of Benjamin (Hartnett) (175 AD2d 936, 937 [1991]), the court held as follows:
“Nor can claimant’s arrest on the drug possession charge support a finding of misconduct, because that charge was ultimately dismissed and there is no evidence in the record to suggest that claimant was in fact involved in any drug-related activity. To hold otherwise would give rise to an implication that willfulness has come to mean being in the wrong place at the wrong time. Indeed, such a holding would establish a dangerous precedent, i.e., that disqualifying conduct may be predicated on a mere arrest unsupported by a conviction.” (See also Matter of Weigand [Nassau County Civ. Serv. Commn.— Commissioner of Labor], 259 AD2d 824 [3d Dept 1999] [a finding of misconduct cannot be predicated upon an arrest for driving under the influence without a conviction].)
Indeed, such a decision was made by the Unemployment Insurance Appeal Board in Silberzweig’s own case. (See exhibit 1 to reply mem.) Initially, the Department of Labor had disqualified Silberzweig from receiving benefits on the ground that his employment had been lost through misconduct because he had been absent without leave during his incarceration. The Appeals Board reversed, stating that
“There is no dispute that the claimant was absent without leave since August 2, 2007 because of his arrest. However, the claimant’s father notified the employer of the claimant’s arrest and incarceration within two days of the arrest, and the employer knew of the claimant’s whereabouts .... The claimant was absent due to his arrest on August 1, 2007, and since he was acquitted on February 13, 2008, I find that the arrest and resulting absence *627 was due to circumstances beyond his control. He reasonably notified the employer of his whereabouts and his inability to work. The claimant did not voluntarily leave this job by these absences caused by the arrest, and he did not commit any act of misconduct with respect to his arrest or absences.”
That rationale applies with equal force here. Since Silberzweig was acquitted of all charges, his arrest and resulting absence from work cannot be attributed to any misconduct on his part. Therefore, no basis exists to deny his reinstatement under the Civil Service Law.
Accordingly, it is hereby adjudged that the petition is granted and the determination of respondent Department of Sanitation, dated March 7, 2008, denying petitioner’s request for reinstatement as a sanitation worker, is vacated and annulled and petitioner shall be reinstated to his position as sanitation worker. Pursuant to Bernstein (supra), Silberzweig is also awarded back pay effective February 27, 2008, the date of his application for reinstatement to the Department. The court in its discretion denies petitioner’s request for attorney’s fees and costs.

. Silberzweig maintains that he did notify the Department of his arrest and incarceration and the Unemployment Insurance Appeal Board made a finding to that effect (see reply mem at 1, exhibit 1). However, the factual dispute is insignificant because the Department acknowledges that it did learn of Silberzweig’s arrest from the City’s Department of Investigation and the issue is not dispositive.

. See Department of Sanitation v Mejia (OATH index No. 317/03) and Matter of Evans v Doherty (Sup Ct, index No. 117664/04 [resolved by stipulation]) cited in the petition (at 5) and Matter of Smith discussed in the reply memorandum (at 3-4).

. The Department also argues that it was proper to terminate petitioner’s employment because he was AWOL due to his incarceration and that any challenge to the termination decision, made after a hearing, must be transferred to the Appellate Division for a review based on substantial evidence. However, those arguments are inapposite, as petitioner is not challenging his termination; he is challenging the denial of the reinstatement application.